In re The SPECIAL FEBRUARY, 1975 GRAND JURY.

In re The SPECIAL APRIL, 1977 GRAND JURY.

Appeal of James E. BAGGOT.

No. 80–1999.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 10, 1981.

Decided June 25, 1981.

Supplemental Opinion Nov. 20, 1981.

Samuel J. Betar, David K. Schmitt, Betar & Petit, Chicago, Ill., for appellant.

Scott R. Lassar, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before PELL and WOOD, Circuit Judges, MARKEY,* Chief Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

The disclosure of grand jury related materials is the issue. Respondent James E. Baggot became one of the targets of the Special February, 1975 Grand Jury which continued with the Special April, 1977 Grand Jury in an investigation of commodities futures trading on the Chicago Board of Trade.[1] No indictment resulted against Baggot, but in accordance with a plea agreement, Baggot pleaded guilty to a two count information charging him with engaging in rigged commodity trades, misdemeanor violations under the Commodity Exchange Act.[2] Subsequently, the Internal Revenue Service ("IRS") sought certain evidence generated by the grand jury investigation to assist its determination of Baggot's civil tax liability.[3] After two prior unsuccessful attempts to secure the district court's approval of the request, the United States Attorney on February 27, 1979 filed another motion, based on a letter from the Internal Revenue Service[4] seeking authority to disclose certain materials to IRS "for use preliminarily to or in connection with

---

* The Honorable Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, is sitting by designation.

1. Numerous indictments in the Northern District of Illinois resulted against commodity traders charging violations of the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*, Internal Revenue laws, in addition to conspiracy and mail fraud violations.

2. 7 U.S.C. § 6c(a)(A). The government claims the purpose of the rigged trades was to evade income taxes. By the scheme, the government explains, Baggot intentionally sustained losses which he deducted in full on his tax returns. However, Baggot recovered part of the loss as a cash kickback which he did not report. He was fined $30,000 and placed on probation for one year.

3. This civil situation is to be distinguished from disclosure to Internal Revenue agents who are assisting the United States Attorney in the presentation of the criminal case to the grand jury under Fed.R.Crim.P. 6(e)(3)(A)(ii). *United States v. Thomas*, 593 F.2d 615, 623, *modified on rehearing on other grounds*, 604 F.2d 450 (5th Cir. 1979) (per curiam).

4. The letter from the Chief of the Examination Division of IRS referring to copies of certain proceedings in open court in Baggot's criminal case with which IRS had been supplied, stated in part:

  * * * * * *

The documents do not contain the names or statements of individuals who returned the cash to BAGGOT, nor do they identify the commodity firms which had prepared the records concerning the fraudulent trades of BAGGOT or if there were any other fraudulent losses or unreported income which could be used to determine the correct tax liability of BAGGOT for 1975.

Therefore, I am requesting that a Rule 6(E) order for civil purposes be obtained for 1975 due to the following reasons: (1) to obtain the information and documents which would be needed to determine the correct liability of BAGGOT for 1975; (2) the names and statements of the witnesses and the documents prepared by the commodity firms in order to substantiate the civil fraud penalty; (3) if a Rule 6(E) order is not obtained a substantial amount of tax revenue would not be collected; and (4) the statements of the witnesses and the documents would be needed in a judicial proceeding if the taxpayer does not agree to the additional tax being assessed. The judicial proceeding as mentioned in item four pertains to Tax Court proceedings. When a taxpayer does not agree with Revenue Agent's tax adjustments and after a statutory notice has been issued, the taxpayer will petition the Tax Court for judicial determination. It is our belief that the Internal Revenue Service procedures which provide that every non-agreed case goes to the Tax Court for settlement (unless the taxpayer decides to agree at any stage of the legal proceedings) constitutes a judicial proceeding within the meaning of the Federal Rules of Criminal Procedure and in particular Rule 6(E)(C). The point being that if we do not have the necessary information preliminary to the Tax Court docketing, under IRS procedures we cannot go forward with our position to the Tax Court.

In order to prove the tax adjustments based upon fraudulent trades and to sustain the fraud penalty the evidence must be clear and convincing. The evidence in the instant case which would be required is the statements of the witness and all pertinent trading records. If the Rule 6(E) order is not obtained the civil adjustments would be based solely upon the information document and limited court proceedings. These documents would be insufficient to sustain the tax adjustments and fraud penalty in Tax Court proceedings.

judicial proceedings relating to the civil tax liability" of Baggot. The motion seeks to take advantage of an exception added in 1977 to the general rule of secrecy required by Rule 6(e)(2) Fed.R.Crim.P.[5] *See* Pub.L. 95–78, § 2, 91 Stat. 319. That exception, Rule 6(e)(3)(C)(i), permits disclosure of matters occurring before the grand jury with court approval "preliminarily to or in connection with a judicial proceeding."

### Background

Before examining the specific items sought to be disclosed, some additional background must be explained. In May 1977, two IRS agents called on Baggot at his home, questioned him and then served him with a grand jury subpoena requiring his appearance before the Special April, 1977 Grand Jury on May 4, 1977. In accordance with the subpoena, Baggot appeared at the office of the United States Attorney. Baggot was advised by an Assistant United States Attorney that if he would tell the truth he would not have to appear before the grand jury, but instead would be interviewed by the Assistant United States Attorney. Baggot consented and made admissions of wrongdoing to the Assistant United States Attorney. When leaving Baggot was advised "to get a lawyer," which he did. After the interview, Assistant United States Attorney Lassar, who was present at the interview, prepared a "Memorandum to File" which is one of the items now sought to be disclosed.

After Baggot secured counsel the plea negotiations began which led to his misdemeanor guilty plea. As part of those negotiations a statement was prepared by the government which Baggot agreed to read to the grand jury on June 8, 1977. The statement would constitute his only testimony before the grand jury. That statement which was read as agreed is also sought to be disclosed.

In addition to those two items, the following specific materials are also sought to be disclosed: a letter to Baggot from Pacific Trading Company showing his net profit for the year 1975; all purchase and sale statements for accounts 21, 22, 4100 and 4101 in the name of James Baggot at Pacific Trading Company for the year 1975; all purchase and sale statements at Central Soya, Inc. for account 509 of James Kerrins,

**5.** Rules 6(e)(2) and 6(e)(3) Fed.R.Crim.P. provide in part:

(e) *Recording and Disclosure of Proceedings.*

(2) *General Rule of Secrecy.*—A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not · disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.

(3) *Exceptions.*

(A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to—
(i) an attorney for the government for use in the performance of such attorney's duty; and
(ii) such government personnel as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law.

(B) Any person to whom matters are disclosed under subparagraph (A)(ii) of this paragraph shall not utilize that grand jury material for any purpose other than assisting the attorney for the government in the performance of such attorney's duty to enforce federal criminal law. An attorney for the government shall promptly provide the district court, before which was impaneled the grand jury whose material has been so disclosed, with the names of the persons to whom such disclosure has been made.

(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—
(i) when so directed by a court preliminarily to or in connection with a judicial proceeding; or
(ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.
If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time, and under such conditions as the court may direct.

account 608 of Katherine Michalski and account 605 of Guenther Kromminga for the year 1975; transcripts of the grand jury testimony of Robert Meyer, James Kerrins, Katherine Michalski and Guenther Kromminga; and the IRS Special Agent's Report on Baggot.[6]

Chief Judge Parsons fully considered the matter each time the government sought disclosure under a different theory. He concluded in his final order entered on July 2, 1980, which is the subject of this appeal, that Baggot's statement which he read to the grand jury and the Lassar "Memorandum to File" were *not* matters occurring before the grand jury and therefore were not subject to Rule 6(e) secrecy limitations. The remaining items sought to be disclosed were found to be classifiable as occurring before the grand jury. Disclosure, however, was denied for those items on the basis that their use was not "preliminarily to or in connection with a judicial proceeding." Disclosure, nevertheless, was permitted under the court's "general supervisory powers." The justification for use of the court's common law supervisory powers was explained to be to prevent the United States Attorney's office from becoming a storehouse for documents used before grand juries long since discharged and to put the material to some good use commensurate with a governmental purpose. The trial court further noted that the criminal proceedings were closed and that the material was needed to determine the tax liability of Baggot. Under these circumstances the court held Rule 6(e) was not implicated.[7]

The government in this court argues alternative positions to support Judge Parsons' order. First, it is contended that all of the items, except the testimony of the named witnesses before the grand jury and part of the Special Agent's Report, are not matters occurring before the grand jury so as to be subject to Rule 6(e). Admittedly certain other parts of the Special Agent's Report were derived from grand jury material and therefore would be within Rule 6(e). Secondly, it is urged that the testimony of the witnesses and the grand jury derived portions of the Special Agent's Report, together with any of the other items determined to be, but not conceded to be, within Rule 6(e), should be authorized to be disclosed as preliminary to a judicial proceeding under the exception to Rule 6(e). That judicial proceeding is said to be the usual judicial proceeding that might be initiated by Baggot in the Tax Court if he chose not to pay any deficiency assessment, or in the district court if he chose to pay the deficiency assessment and then seek its return. Third, the U. S. Attorney supports the use of general supervisory power by Judge Parsons in authorizing disclosure. It is argued that since the criminal proceedings are closed there is at best a minimal need for further grand jury secrecy.

Baggot argues that everything sought to be disclosed is a matter occurring before the grand jury, governed by Rule 6(e). He further argues that the "preliminarily to or in connection with a judicial proceeding" exception is not applicable as there is no present judicial proceeding, and whether there may ever be a judicial proceeding in the future depends on whether any deficiency may be assessed, and then whether he decides to pay or contest it. Judge Parsons agreed that the judicial proceeding exception did not apply, labeling the presently intended use by IRS as only administrative.

### The Trial Court's Use of Its Supervisory Powers

The court in rare situations may have some discretion to slip entirely around Rule

---

**6.** The materials sought to be disclosed as listed have not been treated confidentially in the briefs, and were mentioned at oral argument, but any additional information about those items has not been made known publicly. In any event IRS presumably has that much upon which to initiate an independent civil investigation supplemented by a copy of the criminal information and the proceedings in open court at the time of Baggot's plea and sentencing. Even though we view it as unnecessary, those proceedings in open court were the subject of an order permitting disclosure transmission to the IRS.

**7.** A stay of the disclosure was granted on July 7, 1980 pending appeal.

6(e) and permit disclosure, but that discretion in any event is strictly limited. In *In re Biaggi*, 478 F.2d 489 (2d Cir. 1973), disclosure determined to be in the "public interest" was affirmed, one judge dissenting, despite a finding that the disclosure could not be justified by any Rule 6(e) exception. The court considered it a unique case because both the U. S. Attorney and the witness Biaggi, a candidate at the time for mayor of New York, sought limited release of Biaggi's testimony because of certain campaign publicity. It was in the public political controversy surrounding Biaggi's campaign that the majority found the "public interest" disclosure justification. Judge Hays, in dissent, preferred a stricter interpretation of Rule 6(e) to a judge-made exception in the "public interest."

The government also directs our attention to *In re Report & Recommendation of June 5, 1972 Grand Jury*, 370 F.Supp. 1219 (D.D.C.1974). In that proceeding, Judge Sirica authorized the disclosure to the House of Representatives for use in its impeachment investigation of a "Watergate" grand jury report concerning the President. Rule 6(e) was found to be no barrier since few reasons for secrecy remained, the President did not object, and the release and disclosure were mandated by the "ends of justice." The determination and collection of any tax deficiency Baggot may owe cannot be considered a compelling need in "a matter of the most critical moment to the nation." 370 F.Supp. at 1229–30.

The government also relies on *In re Bullock*, 103 F.Supp. 639 (D.D.C.1952). That court permitted disclosure of the grand jury testimony of a witness policeman to the Police Board of Commissioners for the purpose of determining whether that officer had been guilty of a dereliction of duty.

The testimony of other witnesses, however, was not permitted to be disclosed. The court avoided a literal interpretation of Rule 6(e) by finding disclosure to be within the court's discretion if the furtherance of justice so required.

We may not always be bound by a strict and literal interpretation of Rule 6(e) in the situation where there is some extraordinary and compelling need for disclosure in the interest of justice, and little traditional need for secrecy remains [8] but as important as taxes are, their determination, assessment and collection does not satisfy that standard.[9] The IRS has other effective statutory means to accomplish its civil purposes which are generally sufficient. It should be remembered that that statutory authority, 26 U.S.C. § 7602, which authorizes the Internal Revenue Service to examine any books or records and to cause persons liable for tax and other payments to appear and give testimony, is to be liberally construed in recognition of the vital public purposes served. *United States v. Continental Bank & Trust Co.*, 503 F.2d 45, 50 (10th Cir. 1974); *De Masters v. Arend*, 313 F.2d 79, 86–87 (9th Cir.), *cert. dismissed*, 375 U.S. 936, 84 S.Ct. 341, 11 L.Ed.2d 269 (1963). The government argued to the district court, however, that in this case the Internal Revenue Service was stymied in its efforts to determine Baggot's additional tax obligations, if any. That may be, but the failure of civil process has not been demonstrated in the record. The issue also has significant impact, the government argues, because of the practical concerns which an adverse ruling would have on IRS's future cooperation with subsequent grand jury tax investigations if subsequent disclosure for the civil or other IRS purposes is restricted.[10]

---

**8.** The general justification for grand jury secrecy is set forth in *United States v. Rose*, 215 F.2d 617, 628–29 (3d Cir. 1954), *cited with approval in United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681–82 n.6, 78 S.Ct. 983, 985–86 n.6, 2 L.Ed.2d 1077 (1958).

**9.** *See generally United States v. Procter & Gamble Co.*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958).

**10.** If the grand jury had had sufficient evidence to indict Baggot for tax violations, then but for the plea agreement to the commodity violations, that tax evidence would have been pub-

Our conclusion about the applicability of the Rule 6 exception in this case is a long way from holding that testimony or documents presented to a grand jury are forever foreclosed from future revelation to proper authorities. *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2d Cir. 1960). It is admitted that the government has alternative independent civil means to use for the purpose, but it is argued it will take longer. "It is almost," the United States Attorney argued, "as though you have two different governments, one working against the other, rather than a single unified government of the United States trying to accomplish collection of taxes and prosecution for those who wilfully violate the tax laws." That may seem to be the case, but there are other considerations, however, beside taxes. One consideration which remains is the possible impact upon future grand juries, as wholesale subsequent disclosure might discourage free and untrammeled disclosures by persons having information with respect to the commission of crimes. *United States v. Rose*, 215 F.2d at 628–29. A liberal disclosure policy in tax cases would no doubt facilitate tax collection but it would also create a temptation to abuse the grand jury process. Perhaps few, if any, other countries would restrict the flow of information within the government as we do in various areas, but few other countries are so zealous in protection of the individual rights of its citizens. The government's practical short cut is viewed approvingly in *In re Grand Jury Subpoenas, April, 1978*, 581 F.2d 1103, 1110 (4th Cir. 1978), *cert. denied*, 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979), and in *In re December 1974 Term Grand Jury Investigation*, 449 F.Supp. 743 (D.Md.1978). *But see United States v. Bates*, 627 F.2d 349, 351 n.1 (D.C.Cir.1980).

### The Application of Rule 6(e)

The trial judge found the first two items, the statement Baggot read to the grand jury and the Lassar "Memorandum to File,"

not to be matters occurring before the grand jury under Rule 6(e), and that therefore those two items were disclosable by the government. The trial court made a distinction between Baggot's prepared statement which he read to the grand jury and the transcript of the grand jury proceedings which contained the statement as he read it. The latter, under that view, would not be disclosable. The government argues that disclosure is for a legitimate purpose and not an effort by the Internal Revenue Service to determine what transpired before the grand jury. Baggot's statement, the government explains, was actually prepared outside the grand jury and is nothing more than an acknowledgment of certain facts about the case. The test, according to the government, is whether the document being sought by the Internal Revenue Service for a legitimate purpose will reveal "what took place before the grand jury." *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d at 54. In that case the Interstate Commerce Commission sought to examine the financial records being held under a federal grand jury subpoena *duces tecum*. The records belonged to persons subject to regulation by the Interstate Commerce Commission. Permitting that examination was held not to be a "disclosure of matters appearing before the grand jury" because the Interstate Commerce Commission had statutory purposes and was not seeking to learn what use the grand jury had made of the records.

Baggot's statement, however, is no ordinary business document. It is a statement prepared by the government as a part of a plea agreement for the purpose of having it constitute the bulk of Baggot's testimony when read by him to the grand jury. The statement resulted from an interview with an Assistant United States Attorney when Baggot responded to a grand jury subpoena. Baggot's statement is too grand jury related to be artificially distinguished from the transcript of its reading to the grand

---

licly disclosed in open court as a basis for the acceptance of a plea of guilty or otherwise

revealed at trial. In that situation the present disclosure problem would not have arisen.

jury. We hold the statement is governed by Rule 6(e).

It appears to us that the trial judge may have had a different understanding about the factual background of the Lassar "Memorandum to File." Chief Judge Parsons, in his opinion, indicates he considered the memorandum to reflect only information which the government had learned through its prior non-grand jury investigation of Mr. Baggot, independent of his grand jury appearance one month later. We understand the memorandum to be the documentation for the government file of the first government interview with Baggot when he appeared and was interviewed in response to the grand jury subpoena. At that interview he was admonished that if he "told the truth" he could avoid his actual grand jury appearance. He chose to avoid the grand jury and made admissions of wrongdoing. Those admissions are memorialized in the "Memorandum to File." Making notes for the file in these circumstances may be considered a good administrative procedure, but Rule 6(e) is not thereby necessarily avoided. We are not prepared to hold that the memorandum, although not read to the grand jury, is any less grand jury related than the Baggot statement itself. The file memorandum was used to assist the government in preparation of the Baggot statement which was read to the grand jury. We consider the file memorandum also to be governed by Rule 6(e).

The Special Agent's Report is characterized by the government as consisting of the agent's summary of the case and recommendations, analysis of documents and summaries of witness interviews. Some parts of the report admittedly summarize grand jury testimony and that part is conceded to be governed by Rule 6(e), but not the other contents of the report. Since it appears that the agent's report was prepared after the grand jury had concluded its investigation and summarizes grand jury testimony, it is difficult to see how the report's summary, recommendations, and analysis of documents is sufficiently divorced from the grand jury not to be subject to Rule 6(e). We assume the documents which

were analyzed were the documents subpoenaed before the grand jury. Included in the report are also witness interviews. If those interviews resulted, as did Baggot's, from grand jury subpoenas, then we would view them likewise. Our ruling in this case, however, shall not apply to so much of the report, if any, as may be clearly divorced from the grand jury proceedings. Our holding shall be without prejudice to the government to sort out parts of the report not falling within the restricting views expressed in this opinion and upon approval of the district court to disclose limited portions of that report to the Internal Revenue Service for civil purposes.

Therefore, with that possible limited exception regarding the agent's report, we view all the additional materials sought to be disclosed, the business records, letter and witness testimony as also being "matters occurring before the grand jury" and therefore subject to Rule 6(e).

### Rule 6(e) Exception

Rule 6(e) secrecy may be breached when "directed by the court preliminarily to or in connection with a judicial proceeding." Rule 6(e)(3)(C)(i). The government argues alternatively that the customary civil tax collection procedures which ultimately may result in litigation in the Tax Court or United States District Court satisfy the "preliminarily to or in connection with a judicial proceeding" exception. The district court found those civil procedures in their present status to be only administrative. The option of litigation rests with the taxpayer who may choose to pay any deficiency assessed if one is even assessed. At least at the present time before any deficiency has even been assessed, the disclosure sought clearly cannot be considered as being in connection with an actual judicial proceeding. The only possibility is that disclosure might be considered to be preliminary to a judicial proceeding.

We agree with Chief Judge Parsons that the present Internal Revenue Service civil investigation of Baggot's possible additional

tax liabilities is too embryonic, speculative, and uncertain to firmly say that it is "preliminarily to" a judicial proceeding. *See In re April 1977 Grand Jury Proceedings*, 506 F.Supp. 1174 (E.D.Mich.1981) (and the cases cited therein).

It is at best, with no judicial proceeding now pending and with the possibility that none may result only preliminary to and in connection with, not a judicial proceeding, but a type of administrative proceeding or investigation. *See In re Grand Jury Proceedings*, 309 F.2d 440 (3d Cir. 1962), a case decided before the addition of the "specific judicial proceeding" exception to Rule 6(e). The government relies on *Special February 1971 Grand Jury v. Conlisk*, 490 F.2d 894 (7th Cir. 1973). That case may be distinguished. In that case the Chicago Police Board sought grand jury transcripts of certain policemen's appearances before the grand jury for use in disciplinary proceedings against those same police officers. The Board was seeking to determine that the officers failed to give testimony before the grand jury on the grounds it might tend to incriminate them. If that privilege had been claimed, it would have been in violation of departmental rules. We concluded that the Board hearing was "preliminary" to judicial review because the statutory scheme contemplated judicial review of the Board's findings. Charges had been made by the Superintendent of Police and the matter was to be heard before the Board. At that type of proceeding a policeman may appear with counsel, present witnesses and evidence in his own behalf and cross-examine witnesses. A record of the hearing is kept and the matter may be reviewed in the state courts. In the present case we have no comparable situation. Similarly, in *Matter of Disclosure of Testimony*, 580 F.2d 281 (8th Cir. 1978), limited grand jury disclosure to the Council for Discipline of the Nebraska State Bar Association and the Nebraska Commission on Judicial Qualifications was permitted in a disciplinary investigation of a former prosecutor and possibly a judge allegedly involved in the obstruction of enforcement of the state gambling laws. It was held that proceedings for disciplining lawyers and removal of judges were designed to culminate in a judicial proceeding and therefore were "preliminarily to or in connection with a judicial proceeding." Obviously, there is some flexibility evident in what may be viewed as qualifying for the exception, but the rule is not so flexible as to cover the present Internal Revenue Service administrative interest in the taxes of Baggot. *See In re 1978–1980 Grand Jury Proceedings*, 503 F.Supp. 47 (N.D.Ohio, 1980).[11] The *Conlisk* case, cited by the government, rather than being a signal for liberal disclosure, instead reaffirmed our respect for grand jury secrecy under Rule 6(e). 490 F.2d at 895–96.

If Congress had intended that grand jury materials could generally be used for the convenience of the government to facilitate its other legitimate purposes, particularly after the grand jury's legitimate criminal function had terminated, it could easily have provided for it. As it is, Congress specified only three exceptions, *Conlisk*, 490 F.2d at 896, none of which helps the government in this case. As the government correctly points out, however, there was no intent discernible in the legislative history to generally preclude the use of legitimate grand jury developed evidence for civil law enforcement purposes that is evident from the remarks of Congressman Wiggins of the House Judiciary Committee:

> There will come a time when a grand jury uncovers violations of civil laws, or state or local laws. It then becomes the duty of the attorney for the government, if he or some other attorney for the government cannot act on that information, to turn it over to the appropriate governmental agency so that such agency can do its duty. However, the attorney for the government may do this only after successfully seeking an order of the court.

123 Cong.Rec. 15196 (1977).

What should not be overlooked in those remarks is the "However" segment which

---

11. *See also In re J. Ray McDermott & Co., Inc.*, 622 F.2d 166 (5th Cir. 1980); and *In re Grand Jury Investigation of Uranium Industry*, 1979-2 Trade Cases (CCH), ¶ 62,798 (D.D.C.1979).

conditions disclosure upon the attorney for the government successfully seeking an order of the court. What the Congress then legislated for judicial guidance was not a general grant of broad discretion to permit the courts to authorize disclosure for any good government purpose. Instead, traditional grand jury secrecy was specifically provided subject only to certain limited exceptions in which the court's discretion might properly be exercised.

There may be compelling situations necessitating disclosure to satisfy the "ends of justice," *Douglas Oil Co. v. Petrol Shops Northwest*, 441 U.S. 211, 219–20, 99 S.Ct. 1667, 1673, 60 L.Ed.2d 156 (1979); *United States v. Socony-Vacuum Oil Co., Inc.*, 310 U.S. 150, 234, 60 S.Ct. 811, 849, 84 L.Ed. 1129 (1940), but Baggot's possible tax deficiency although of importance and worthy of civil pursuit, is not of such consequence as to justify the fashioning of a special judicial exception to grand jury secrecy.

### CONCLUSION

■ In our view all of the items sought to be disclosed are items "occurring before the grand jury," with the possible exception of limited portions of the agent's report, and do not qualify at the present stage of Internal Revenue Service administrative proceedings for any exception to Rule 6(e).

Reversed and remanded for possible further consideration of such parts of the agent's report as still may be claimed to be matters not occurring before the grand jury in accordance with the views expressed in this opinion.

PELL, concurring in part, dissenting in part.

The majority opinion correctly characterizes its view as being "restricting." Because I regard the views expressed in the majority opinion as being unduly restricting of a legitimate use of the requested material, I respectfully dissent. I do agree with the majority opinion in its holding that the district court exceeded its discretion in permitting disclosure under its supervisory power. On the other hand, in my opinion

the Internal Revenue System was entitled under Rule 6(e)(3)(C)(i), Fed.R.Crim.P., to most, if not all, of the disclosure it requested.

The majority opinion cites at two places *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52 (2d Cir. 1960). I do not gather that the majority thought that case was incorrectly decided. Chief Judge Lumbard made it succinctly clear that the rule against disclosure was "intended only to protect against disclosure of what is said or what takes place in the grand jury room." *Id.* at 54. The opinion in *Interstate* also pointed out that the purpose of the secrecy rule was not to foreclose from all further revelation to proper authorities the information or documents which were presented to the grand jury. *Id.* Elaborating further the court stated:

> Thus, when testimony or data is sought for its own sake—for its intrinsic value in the furtherance of a lawful investigation—rather than to learn what took place before the grand jury, it is not a valid defense to disclosure that the same information was revealed to a grand jury or that the same documents had been, or were presently being, examined by a grand jury.

*Id.*

Unfortunately, it appears to me that the majority opinion has unduly limited the rule permitting disclosure, notwithstanding a disclaimer of such intent, so as to foreclose substantially further revelation of any documents or testimony to proper authorities in a situation such as that here involved in which there is no presently existing "judicial proceeding." The majority opinion fails to give any real recognition to the word "preliminarily" in the rule of disclosure. Obviously, it appears to me, the drafters of the rule contemplated two situations in which there could be disclosure based upon a judicial proceeding situation. One of these was "in connection" with a judicial proceeding which would seem to mean that there was a judicial proceeding in existence. On the other hand, if we give the plain dictionary meaning to the word

"preliminarily" that of "preceding the main business" or "lying before," or "leading to," the disclosure would be pertaining to a judicial proceeding not yet in existence. The majority opinion appears to hold that there must be some real certainty that there will be a judicial proceeding, or, at the very least, such a proceeding must be in an enceinte status. I do not regard the rule as so requiring.

It is true, of course, as the majority states, that the option of litigation rests with the taxpayer who may wish to pay any deficiency assessed if one is even assessed. From the vigorous manner in which the present litigation is being pursued, I would find more certainty in the likelihood of ultimate judicial proceedings than does the majority. In any event, the actual beginning of litigation is always an uncertain matter which may be deferred or even never begun for any of several reasons. If we read into the rule that the disclosure preliminarily to a judicial proceeding must be preliminarily to a judicial proceeding bound to happen, we substantially are curtailing the plain language of the rule in a situation such as the present where there has been a guilty plea to an information charging an understatement of taxable income of approximately $60,000. It would not seem to characterize correctly the likelihood of ultimate vigorous pursuit of civil liability by the Internal Revenue Service as being "embryonic, speculative and uncertain." In sum, on this point, it appears to me from the facts of this case that there is reasonable certainty that a judicial proceeding will follow but that even if this was not a practical certainty under the plain wording of the rule of disclosure the Internal Revenue Service was entitled to disclosure of the items it sought.

A secondary aspect, however, aside from that of being preliminarily to a judicial proceeding is that much of the material sought is in the nature of documents which are sought for their own sake or as Chief Judge Lumbard stated for their "intrinsic value in the furtherance of a lawful investigation." *Interstate*, 280 F.2d at 54.

This court approved the above principle in *United States v. Stanford*, 589 F.2d 285, 291 (7th Cir. 1978), *cert. denied*, 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979). Under the principle established in that case, it would appear that some of the documents in the present case, in any event, should have been disclosed. These were the "Memorandum to File" prepared by the Assistant U. S. Attorney, a letter to Baggot from Pacific Trading Company, and purchase and sale statements from Baggot's account.

The Lassar memorandum was clearly a work product of the attorney and it appears to me that on its face it reveals nothing about what occurred before the grand jury. Even if Lassar had intended some of his memorandum to refer to matters which might be presented to the grand jury it is speculative to say that any particular factual matters were actually so presented. Baggot argued in his reply brief that *Stanford* was factually distinguishable in that the disclosures made were documents which the complainants had either personally executed or with which they were thoroughly familiar. In the present case, I fail to see why a letter to Baggot and his purchase and sale statements would not be matters with which he was thoroughly familiar. There was probably good reason to think that other purchase and sale documents were items with which he was familiar. Baggot also attempts to distinguish *Stanford* on the basis that the documents there were not disclosed because they revealed nothing about the grand jury investigation. Because the correspondence and commodities statements have in the meaning of *Interstate* their own intrinsic value I fail to see where the documents themselves reveal anything about the grand jury investigation. They are sought for their own significance not because of their having been put before the grand jury. An appropriate inquiry would be whether documents, once they have been before a grand jury, are immobilized perpetually from use in a legitimate investigation by another branch of government. The majority opinion has not chosen to address *Stanford* at all.

Baggot also attempts to distinguish *Interstate Dress Carriers* because of the "independent statutory authority" which the ICC commanded to inspect the documents. Baggot also argues that the IRS had "no comparable right . . . to the grand jury documents." However, this ignores the fact that in *Interstate* the documents had personally been subpoenaed by a grand jury and were in custody of the Justice Department pursuant to the subpoena. Further, as the majority opinion itself mentioned, the IRS did have comparable statutory authority to that of the ICC under 26 U.S.C. § 7602 to examine books and records. Certainly this would apply to Baggot's own documents such as a letter to him and documents pertaining to his commodity transactions.

A later case which I regard as stating the law of this circuit as set forth in *Stanford* is that of *S.E.C. v. Everest Management Corp.*, 87 F.R.D. 100, 105 (S.D.N.Y. 1980). In that case, the SEC requested permission to use documents presented directly to grand juries pursuant to grand jury subpoenas. The court summarized the law which I believe should be applicable to the documents here involved as follows:

A request for grand jury documents evokes different, and less exacting, considerations than a request for transcripts of grand jury testimony. *Illinois v. Sarbaugh*, 552 F.2d 768, 772 n.2 (7th Cir.), *cert. denied*, 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977); *see United States v. Stanford*, 589 F.2d 285, 291 (7th Cir. 1978), *cert. denied*, 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979). Documents produced to the grand jury do not intrinsically reveal what transpired in the grand jury room. This reasoning has led some courts to comment that documents may not fall within the ambit of rule 6(e)'s secrecy requirement. *United States v. Weinstein*, 511 F.2d 622, 627 n.5 (2d Cir.), *cert. denied*, 422 U.S. 1042, 95 S.Ct. 2655, 45 L.Ed.2d 693 (1975); *In re Grand Jury Investigation of Ven-Fuel*, 441 F.Supp. 1299, 1303 (M.D.Fla.1977). The more prevalent view, and the one opted for by this court, is expressed in

*United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2d Cir. 1960): "Documents as well as oral testimony of course may come within rule 6(e)'s proscription against disclosure." Emphasis is placed on the purpose for which grand jury documents are sought. Disclosure is appropriate where documents are sought to further legitimate purposes in connection with lawful investigations or judicial proceedings. *See, e. g., Interstate Dress Carriers, Inc., supra*, 280 F.2d at 54 (disclosure to further lawful agency investigation); *United States v. Saks & Co.*, 426 F.Supp. 812, 815 (S.D.N.Y.1976) (same); *Capitol Indemnity Corp. v. First Minnesota Construction Co.*, 405 F.Supp. 929, 931 (D.Mass.1975) (disclosure to further discovery in civil litigation).

In *Everest*, the SEC was granted disclosure even though its need for the documents was largely occasioned by its own carelessness. The district court judge observed that disclosure would save the parties from costly and perhaps futile discovery of documents produced earlier to the grand jury. Here the majority opinion requires the IRS to utilize discovery procedures other than utilizing the documents which should be readily available under the law just cited. Little purpose is served by such a requirement in this case where the grand jury proceedings have long since expired.

Finally, while the majority opinion accords some deference to the importance of collecting taxes and refers to such as "being worthy of civil pursuit," the opinion nevertheless holds that it is not of such consequence as to justify the fashioning of a special judicial exception to grand jury secrecy. For the reasons I have indicated herein, I do not think any judicial exception need be fashioned. All that needs to be done is to apply existing law to an extremely important phase of governmental activity, namely that of collecting the revenue often from unwilling or evasive sources. Our taxation system is frequently under attack and we are aware that evasion does occur. We should also be mindful that the

continued functioning of our government is dependent upon the successful collection of legitimately owed taxes.

## ORDER

On consideration of the petition for rehearing and suggestion for rehearing *en banc* filed in the above-entitled cause by defendant-appellee, James E. Baggot, a vote of the active members of the court was requested. The panel considered the petition for rehearing and a majority of the judges on the original panel have voted to deny the petition for rehearing. A majority of the active members of the court have also voted to deny a rehearing *en banc*.*

It Is Ordered that the aforesaid petition for rehearing be, and the same is hereby Denied.

It Is Further Ordered that the supplement to the majority opinion and also the partial concurrence and dissent attached to this order shall be, and the same are made a part of the opinion in this case.

## SUPPLEMENT TO THE MAJORITY OPINION

HARLINGTON WOOD, Jr., Circuit Judge.

Judge Pell's dissent and the government's petition for rehearing correctly point out that the majority opinion did not discuss in depth its holding that certain commodity trading records subpoenaed by the grand jury from third parties were considered to be items subject to Rule 6(e). Some additional comments are therefore appropriate.

We see no conflict with our holding in *United States v. Stanford*, 589 F.2d 285 (7th Cir. 1978), *cert. denied*, 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979). The factual circumstances of that case were peculiar and distinguishable, but apart from that the rule discussed there has not been satisfactorily met to permit release of the documents in the present case. In *Stanford*, it was the defendants who claimed a violation of Rule 6(e) because they, not some third parties, were shown certain documents from their own individual governmental employment or welfare files obtained by grand jury subpoena. This court determined that the document disclosure was proper. That holding, with which we agree, was: "The disclosures challenged here revealed nothing about the grand jury investigation, and the disclosures were made only to persons legitimately connected with the documents." 589 F.2d at 291. It is stressed that "[u]nless information reveals something about grand jury proceedings, secrecy is unnecessary." *Id.*

Judge Parsons in the present case considered *Stanford* and correctly concluded that the particular documents which he examined in camera should nevertheless be viewed as matters occurring before the grand jury and therefore subject to Rule 6(e). As he was thoroughly familiar with the grand jury proceedings, we see no justification for disputing his view of those documents. The information filed against Baggot sets out various commodity trades which were in question. The particular documents appear to be related to those trades and to be the basis of the grand jury's investigation. The defendant aptly labels the documents the "essence" of the grand jury inquiry. We note that the government did not cross appeal Judge Parson's *Stanford* ruling as Judge Parsons nevertheless proceeded to release the documents under his general supervisory powers.

It seems to be argued that if documents subpoenaed by a grand jury have some "intrinsic value," that is, they were created for purposes other than the grand jury investigations, then they are automatically outside of Rule 6(e). *See United States v. Interstate Dress Carriers*, 280 F.2d 52, 54 (2d Cir. 1960), and its progeny. If that is all there is to the test, grand jury secrecy would be seriously eroded by being sacrificed to the alleged need for the documents by someone else and the power of a grand jury could be misused. The policies favoring grand jury secrecy in most instances must still be given

---

* Judges Bauer and Pell have voted to grant the petition for rehearing *en banc*.

# 1244

due weight. *Douglas Oil Co. v. Petrol Shops Northwest*, 441 U.S. 211, 219 n.10, 99 S.Ct. 1667, 1673 n.10, 60 L.Ed.2d 156 (1979); *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681–82 and n.6, 78 S.Ct. 983, 985–86 and n.6, 2 L.Ed.2d 1077 (1958).

▮▮ It is not the holding of this case that all third party documents subpoenaed by a grand jury thereby forever after acquire immunity from any other use.[1] Only those subpoenaed documents should be subject to Rule 6(e) which when reasonably considered in the context of the particular grand jury investigation are determined by the trial court to reveal some secret aspect of the grand jury investigation. If a third party document has intrinsic value and a usefulness for other legitimate purposes and would not breach grand jury secrecy, it may be released for those purposes outside of Rule 6(e). The trial judge who is thoroughly familiar with the grand jury proceeding should be accorded wide discretion in that determination.

Some courts have gone a degree further than we find necessary in these particular circumstances and have held that "matters occurring before the grand jury" include documents that "*[m]ay tend* to reveal what transpired before the grand jury." (Emphasis supplied.) *United States v. Armco Steel Corp.*, 458 F.Supp. 784, 790 (S.D.Mo. 1978). *Accord, In re Grand Jury Investigation (Lance)*, 610 F.2d 202, 216 (5th Cir. 1980); *United States v. Gold*, 470 F.Supp. 1336, 1350 (N.D.Ill.1979). *See also United States v. Hughes*, 429 F.2d 1293, 1294 (10th Cir. 1970); *U.S. Industries, Inc. v. United States District Court*, 345 F.2d 18, 20–21 (9th Cir.), *cert. denied*, 382 U.S. 814, 86 S.Ct. 32, 15 L.Ed.2d 62 (1965). Under that test, the documents here would unquestionably be protected from disclosure.

## SUPPLEMENTAL CONCURRENCE AND DISSENT

PELL, Circuit Judge, concurring in part, dissenting in part.

While I continue to adhere to the position taken and the supporting reasons therefor

expressed in my partial concurrence and partial dissent to the original opinion of this court, I do note the following in response to the Supplemental Opinion.

The Supplemental Opinion does address the case of *United States v. Stanford*, 589 F.2d 285 (7th Cir. 1978), *cert. denied*, 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979), and purports to brush it aside as being distinguishable. I fail to discern that the Supplemental Opinion has demonstrated that the principles enunciated in *Stanford* are not applicable to at least a part of the items that the majority now veils in secrecy. The Supplemental Opinion states that the majority agrees with the holding in *Stanford* but that the disclosures challenged there, first of all, reveal nothing about the grand jury investigation, and second, that the disclosures were made only to persons legitimately connected with the documents. To the first of these grounds which the majority apparently finds as a basis of non-applicability of *Stanford* to the present case, as I endeavored to show in my original dissent at least some of the documents reveal nothing about what occurred before the grand jury. As to the second of the above so-called distinguishing features between *Stanford* and the present case this was phrased somewhat differently by Baggot's response to the opposition to the rehearing *in banc* as being disclosures of documents "which the complainants either personally executed or with which they were thoroughly familiar." Certainly a letter to Baggot and his purchase and sales statements would be matters with which he was thoroughly familiar. Indeed, he presumably personally executed some of these. His connection with the documents would also seem to have been legitimate. Baggot also argues in his response that the disclosure in *Stanford* was made for use in a criminal investigation rather than for civil purposes. Certainly it would seem that their disclosure in a criminal investigation

---

1. Upon return to their original owners after serving their grand jury purposes, the docu-

ments in any event would be subject to later subpoena and use by others.

would be more prejudicial than in a civil investigation. The Government is seeking disclosure in both the present case and in *Stanford.*

I also note the Supplemental Opinion's statement that "[o]nly those subpoenaed documents should be subject to Rule 6(e) which when reasonably considered in the context of the particular grand jury investigation are determined by the trial court to reveal some secret aspect of the grand jury investigation." This presents what is indeed an anomalous attribute of the district court's opinion. That court, while finding a grand jury nexus on many of the documents, nevertheless apparently was not sufficiently impressed that disclosure would "reveal some secret aspect of the grand jury investigation," because the court nevertheless permitted disclosure under its supervisory power.

In sum, no doubt it is good policy to render obeisance at the shrine of grand jury secrecy, but that policy does not require that the worship should be cultish.