ESTATE OF RICHARD L. JONES, Deceased, STANFORD S. SCHNEIDER, Successor Administrator, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Jones v. Commissioner
Docket No. 22174-86.
United States Tax Court
T.C. Memo 1988-348; 1988 Tax Ct. Memo LEXIS 375; 55 T.C.M. (CCH) 1467; T.C.M. (RIA) 88348; August 3, 1988. Daniel T. Hartnett, for the petitioner. Michael W. Bitner, for the respondent. POWELL
MEMORANDUM FINDINGS OF FACT AND OPINION POWELL, Special Trial Judge:[1] This case is before the Court on petitioner's Motion To Suppress and To Shift Burden of Going Forward. The basic question is whether the notice of deficiency was based upon improperly disclosed grand jury materials. For the reasons stated below, we find that there was no improper use of grand jury materials and deny the motion. FINDINGS OF FACT The case was submitted on a stipulated record, and the facts are as follows: *376 During 1984, 1985 and the first part of 1986 Richard L. Jones, Bridget C. Jones and others allegedly had been engaged in a fraudulent scheme that generated a large amount of money. In the first four months of 1986, the Joneses and others devised schemes to "launder" their funds. The Internal Revenue Service (IRS) and the United States Attorney had commenced investigations concerning the Joneses' affairs during February or March, 1986, and the United States Attorney had convened a grand jury. While there may have been overlapping of the two investigations, it appears that the grand jury's focus was on Title 18 and Title 31 crimes and the IRS was investigating Title 26 crimes. In February or March, 1986, the Joneses hired Donald Montgomery as a business consultant. Mr. Montgomery was not associated with any person connected with either of the investigations by the Government. Mr. Jones died on April 15, 1986. Mr. Montgomery continued to work for Mrs. Jones, and also became the administrator of the estate of Mr. Jones. There were apparently eleven Government agents associated with the pending investigations. For convenience, these are grouped below: Criminal Intelligence *377 Division -- IRS: Mr. Calhoun - Division Group Manager Mr. Sutton -- Special Agent Mr. Bandy -- Special Agent Mr. Ahern -- Special Agent Ms. Molinar -- Special Agent Examination Division - IRS: Mr. Barnes -- Division Group Manager Mr. Goldbeck -- Group Manager Ms. Temperelli -- Revenue Agent District Counsel's Office -- IRS: Mr. Ehrlich -- District Counsel
Mr. Fritz -- Assistant District Counsel
United States Attorney's Office: Mr. Chesley -- Assistant United States Attorney
Messrs. Calhoun, Sutton and Bandy of the IRS' Criminal Investigation Division (CID) and Mr. Ehrlich, the District Counsel, had access to "matters occurring before the grand jury" during the relevant period. On April 15, 1986, Mr. Calhoun contacted Mr. Goldbeck, informed him that Mr. Jones was dead and suggested that a jeopardy assessment situation might exist. Ms. Temperelli was assigned to make computations with regard to the tax liability for 1984 and 1985. She met with Agents Sutton and Bandy. These agents gave her an "Interest Reporting Program" (IRP) document for two banks showing interest income for 1984 and 1985 and a list of banks obtained by a so-called "mail cover" requested *378 by the CID. These documents had not been obtained by or presented to the grand jury. She subsequently recommended that jeopardy assessments be made, and on April 18, 1986, jeopardy assessments were made for 1984 and 1985. On April 22, 1986, the grand jury issued a subpoena duces tecum on Mrs. Jones for the business records of Mr. Jones. After service of the subpoena by Agent Bandy, Mrs. Jones told Mr. Montgomery that she wanted to conceal or destroy the records. Subsequently, Mr. Montomery told Agent Bandy about the schemes of Mr. and Mrs. Jones, and around May 1, 1986, he agreed to cooperate with the investigation upon a written agreement, signed by the United States Attorney that he would not be prosecuted. As a part of this cooperation, two undercover agents of the CID (Ahern and Molinar) were employed by Mrs. Jones presumably at Mr. Montgomery's suggestion. In early May, Mr. Calhoun allowed personnel of the Examination Division to inspect other records pertaining to the financial affairs of Mr. Jones. As with the prior documents, after discussions with counsel, it was determined that these records had not been before the grand jury. During this period Mr. Montgomery *379 allowed CID agents to photocopy certain checks. On May 21, 1986, Mrs. Jones instructed Messrs. Montgomery and Ahern to remove the records from her house and hide them so that she would not know where the records were when she appeared before the grand jury. Messrs. Montgomery and Ahern leased a storage facility in another city in their names and began moving the records to that facility. Some of these records were made available to Ms. Temperelli and on May 27, 1986, a second, and significantly larger, jeopardy assessment was made. During late May or early June, most, if not all, of the records removed by Messrs. Ahern and Montgomery that were then in the custody of the CID were inspected by agents of the Examination Division. On June 13, 1986 a notice of deficiency was issued to the Estate of Richard L. Jones (petitioner) based on information extracted from these records. Petitioner filed a petition in this Court on June 23, 1986. After the case was at issue, petitioner, on October 1, 1987, filed its Motion to Suppress and To Shift Burden of Going Forward. Essentially, this motion is based on the allegation that the statutory notice is based upon disclosures of matters occurring *380 before a Federal Grand Jury in violation of Rule 6(e), Federal Rules of Criminal Procedure. OPINION Rule 6(e)(2), Federal Rules of Criminal Procedure, provides in relevant part: (2) General Rule of Secrecy. * * * an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision [such government personnel * * * as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law] shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules.
While there are provisions for disclosure, as far as we are concerned in this case, no such provision of grand jury materials was applicable, and no application for a so-called 6(e) order was made. Rather, the basic dispute focuses on whether the information upon which the notice of deficiency was based was derived from "matters occurring before the grand jury". Neither party has really focused on the information that was used in the formulation of the *381 notice of deficiency. According, however, to Ms. Temperelli's testimony in the jeopardy assessment hearings, which petitioner does not dispute, the notice of deficiency was based, in large part, if not exclusively, on the so-called customer lists of Mr. Jones that Messrs. Montgomery and Ahern made available to the IRS. At the time that these documents were disclosed, they had not been presented to the grand jury, and, indeed, there is not evidence that they were ever presented to the grand jury. Under these circumstances it is difficult to see how these documents would reveal "some secret aspect of the grand jury investigation." Compare Phillips v. United States,843 F.2d 438, 441 (11th Cir. 1988). Petitioner, however, arrives at a different conclusion. The basic premise of the argument is that, through his "no-prosecution" agreement with the United States Attorney, Mr. Montgomery became a so-called "agent" of the grand jury; when he turned the records over to Ms. Temperelli, therefore, he was disclosing "matters occurring before the grand jury." The linchpin of the premise is that the genesis of Mr. Montgomery's cooperation with the Government's investigations *382 was the grand jury subpoena served upon Mrs. Jones for these and other records. Accordingly petitioner reasons that "the documents transferred to the undercover agents in an apparent attempt to obstruct the grand jury investigation, and the other information obtained by these agents is simply too 'grand jury related' to admit any other description." We disagree. The most that could be said concerning Mr. Montgomery's relationship with the grand jury is that he may have been a potential witness. He clearly was not "such government personnel * * * as are deemed necessary" to assist an attorney for the Government. See Rule 6(e)(A)(ii). Indeed, there is no indication that Mr. Montgomery was privy to any of the workings of or matters before the grand jury except that a subpoena had been served on Mrs. Jones, and Mrs. Jones had disclosed that fact to him. Petitioner relies heavily upon In re Special February, 1975 Grand Jury (Baggot),662 F.2d 1232 (7th Cir. 1981), affd. sub nom, United States v. Baggot,463 U.S. 476 (1983). In that case Baggot was subpoenaed to appear before a grand jury. In a preappearance interview with an attorney for the Government, *383 Baggot made certain statements that were memorialized by the attorney. In addition, the attorney prepared a statement that Baggot read to the grand jury in lieu of testifying. Subsequently, the Government sought an order under Rule 6(e)(3)(C) to release these documents. The court found that the attorney's memorandum of the interview, although not read to the grand jury, constituted grand jury materials, because it "was used to assist the government in preparation of the Baggot statement which was read to the grand jury." In re Special February, 1975 Grand Jury (Baggot),662 F.2d at 1238. That situation is far different from the case here where documents of a third party that had not been presented to the grand jury nor summarized for use by the grand jury are claimed to be grand jury information. Compare Phillips v. United States, supra.
We similarly are not persuaded that those documents should be considered grand jury material because they had been the subject of a grand jury subpoena. There were at least two somewhat parallel investigations at that time, and the fact of the matter is that the documents were not obtained pursuant to the grand *384 jury subpoena. Rather, they were obtained by the undercover IRS investigation. Thus, there can be no question that these documents were free from any so-called grand jury taint and clearly could not have violated "the sanctity of the [grand jury] proceedings." Compare Anaya v. United States,815 F.2d 1373, 1378-1379 (10th Cir. 1987). Finally, petitioner suggests that, by informing Ms. Temperelli and her associates of the undercover operation and the vain conspiracy to destroy the records of Mr. Jones, those persons, who did have access to grand jury matters, violated the secrecy provisions of the grand jury. The short answer to this is that there is not one scintilla of evidence to show that at that time these matters were even known to the grand jury. [2]
*385 An appropriate order will be issued.
Footnotes
1. This case was assigned pursuant to the provisions of section 7456(d) (redesignated as section 7443A by the Tax Reform Act of 1986, Pub. L. 99-514, section 1556, 100 Stat. 2755) and Rule 180 et seq. ↩
2. Our holding makes it unnecessary to reach respondent's alternative argument that even if Rule 6(e) secrecy had been violated, suppression would be inappropriate. Rule 6 contains no provision for automatic suppression. Any remedy of suppression would then fall within the ambit of the so-called exclusionary rule. While suppression may be appropriate, that remedy is drastic, and other remedies may be more appropriate. Compare Bank of Nova Scotia v. United States,    U.S.    (S. Ct. No. 87-578, decided June 22, 1988, Slip Op. 12↩).