DEBRA KLUGER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 26124–83.     Filed September 11, 1984.

*Elliot Silverman* and *Robert S. Fink*, for the petitioner.
*Sergio Garcia-Pages*, for the respondent.

KÖRNER, *Judge*: This case is before us on petitioner's motion to suppress evidence and to shift the burden of proof, treated as a motion to shift the burden of going forward with the evidence, to respondent.[1] Respondent determined a deficiency of $769,769.34 in petitioner's 1979 Federal income tax. Respondent's statutory notice of deficiency which contained this determination was based solely upon information respondent secured from certain grand jury proceedings. We must decide whether respondent's use of these grand jury materials to determine the deficiency against this petitioner was improper. If such use was improper, we must additionally determine

---

[1]Petitioner in her motion appears to request that we shift the burden of persuasion to respondent. However, this Court has never, in any context, invoked such a sanction. The cases cited by petitioner in her brief in support of the present motion make it clear that the most petitioner can hope for in this case is a shift to respondent of the burden of going forward with the evidence (see, e.g., *Helvering v. Taylor*, 293 U.S. 507 (1935); *Jackson v. Commissioner*, 73 T.C. 394, 401 (1979)), and, consistent with such cases, we will accordingly treat petitioner's present request as one to shift the burden of going forward with the evidence, rather than one to shift the ultimate burden of persuasion.

Petitioner's original motion also requested that summary judgment be rendered in her favor. On brief, in support of her motion, petitioner has conceded that summary judgment is inappropriate at this time, and we treat this concession as an amendment to the present motion.

whether the exclusion of evidence, and/or shifting the burden of going forward to respondent, are appropriate sanctions in the context of this case.

FINDINGS OF FACT

The facts are not materially in dispute. During 1981, a Federal grand jury within the jurisdiction of the U.S. District Court for the Eastern District of New York commenced an investigation into alleged large-scale, multimillion dollar drug trafficking, involving a number of individuals, including Henry Kluger, the husband of petitioner Debra Kluger. In the course of this grand jury investigation, various books, records, and other documents were subpoenaed by, or presented to, the grand jury; additionally, transcripts were made of testimony of witnesses called to testify.

On February 27, 1982, Henry Kluger died, and pending criminal indictment proceedings against him were therefore terminated. On March 29, 1983, an assistant U.S. attorney, without petitioner's knowledge, applied to the U.S. District Court for the Eastern District of New York, pursuant to rule 6(e)(C)(3)(i) of the Federal Rules of Criminal Procedure, for an order authorizing "the United States Attorney for the Eastern District of New York to disclose to the Internal Revenue Service the testimony, books, records and other documents subpoenaed and otherwise presented to the Grand Jury in connection with [the investigation of Henry Kluger] for the purpose of determining, establishing, assessing and collecting the federal civil tax liabilities of HENRY KLUGER and his heirs, and for use in any judicial proceedings related thereto." The sole ground offered in support of this motion was a statement that Internal Revenue Service agents "have determined that the books, records and other documents and testimony obtained during the Grand Jury's investigation of this matter are necessary to establish, assess and collect the federal civil tax liabilities of Henry Kluger." The motion was made ex parte.

Later that same day, March 29, 1983, the Honorable Henry Bramwell, U.S. District Judge, granted the U.S. attorney's motion under rule 6(e)(3)(C)(i), Fed. R. Crim. P., by order which provided in pertinent part as follows:

the United States Attorney for the Eastern District of New York is hereby authorized to make available to agents of the Internal Revenue Service all books, records and documents subpoenaed by or presented to the Grand Jury pertaining to [Henry Kluger] and the transcripts of testimony presented to the Grand Jury in that connection for purposes of determining, establishing, assessing and collecting the Federal civil tax liability of Henry Kluger and his heirs, and for use in any judicial proceeding related thereto.

No civil litigation was in preparation or pending between the United States, decedent, his estate, or his survivors, on March 29, 1983.[2]

On June 15, 1983, respondent issued a statutory notice of deficiency for 1979 to petitioner, individually and as the surviving wife of Henry Kluger.[3] Petitioner timely filed a petition with this Court contesting said deficiencies, at which time she was a resident of the State of New York. As indicated above, this statutory notice determined that $769,769.34 in additional income tax was due on the joint Federal income tax return petitioner had filed with Henry Kluger for 1979. The determination concededly was based solely upon information obtained by respondent from the grand jury investigation of Henry Kluger in the U.S. District Court for the Eastern District of New York, pursuant to that court's order of March 29, 1983, under rule 6(e)(3)(C)(i), Fed. R. Crim. P. (hereinafter referred to as the rule 6(e) order). The sole basis alleged for the asserted deficiency was respondent's determination that Henry Kluger had earned $1,086,111.49 in unreported income from illegal drug trafficking.

---

[2]Certain civil forfeiture proceedings had previously been commenced by the United States against certain amounts held by Henry Kluger at the time of his death, but these proceedings had been settled in January 1983. Probate proceedings relating to the Estate of Henry Kluger were pending before the Circuit Court for Dade County, FL, on Mar. 29, 1983, but the Internal Revenue Service had not, at that time, filed a claim in those proceedings for income taxes and did not do so until May 9, 1983.

[3]Petitioner affirmatively raised the issue of the statute of limitations under sec. 6501(a) in her petition, which respondent answered by pleading the 6-year statute of limitations under sec. 6501(e). Since this issue cannot be decided before a resolution of the substantive issues regarding the amount of·deficiency, if any, owed by petitioner, the statute of limitations issue must be deferred for the present.

All statutory references herein are to the Internal Revenue Code of 1954 as in effect in the year in issue, and all Rule references are to the Rules of Practice and Procedure of the U.S. Tax Court, except as otherwise noted.

OPINION

Petitioner contends that respondent's receipt of information produced by the grand jury investigation of Henry Kluger (hereinafter the grand jury materials) was not in compliance with the requirements of rule 6(e), Fed. R. Crim. P., as interpreted by the U.S. Supreme Court in the recent cases of *United States v. Baggot*, 463 U.S. 476 (1983), and *United States v. Sells Engineering, Inc.*, 463 U.S. 418 (1983), which were released subsequent to the issuance of the rule 6(e) order herein, and such receipt therefore constituted an abuse of the grand jury process requiring the suppression of all of the grand jury materials in this proceeding. Petitioner further contends that, if the grand jury materials are to be suppressed in this proceeding, the notice of deficiency herein, which was based solely on information contained in the grand jury materials, is without any foundation whatsoever, and such notice therefore is not entitled to the presumption of correctness which generally attaches to statutory notices. Petitioner therefore concludes that the burden of going forward with the evidence must be shifted to the respondent in this case, and that respondent should be allowed to satisfy his proposed burden only with what petitioner describes as "untainted evidence."[4]

Respondent does not deny that the statutory notice of deficiency herein was based solely on information culled from the grand jury materials. He denies, however, that his receipt and use of such information was improper in this case and argues that suppression of the materials, and the alleged consequent results argued by petitioner, are therefore unwarranted. In support of this conclusion, respondent points out that the grand jury materials were transmitted to the Internal Revenue Service pursuant to an order of the District Court for the Eastern District of New York which was secured only after full disclosure to the District Court of the purpose for which the materials were sought, and argues that the existence of this District Court order deprives this Court of jurisdiction to even consider petitioner's suppression motion.

---

[4]Petitioner recognizes that respondent's alleged misuse and abuse of the grand jury process could not operate to invalidate the statutory notice of deficiency. See *Graham v. Commissioner*, 82 T.C. 299 (1984) (Court reviewed), on appeal (3d Cir., May 22, 1984).

Secondly, respondent maintains that even if jurisdiction is present, his receipt and use of the grand jury materials did not constitute an abuse of the grand jury process. In this regard, respondent concedes that the rule 6(e) order, pursuant to which the grand jury materials were released to the Internal Revenue Service, did not satisfy the criteria subsequently announced by the Supreme Court in *United States v. Baggot, supra*, for proper issuance of such orders. However, respondent argues that the principles announced in that decision should not apply retroactively to invalidate the present rule 6(e) order.

Finally, respondent contends that even if we determine that *Baggot* and *Sells Engineering, Inc.*, should be retroactively applied, nevertheless suppression of the grand jury materials is appropriate in the context of this case.

## I. The Power of This Court To Review the Rule 6(e) Order

### A. JURISDICTION

Respondent's contention that this Court is without authority to consider the ultimate issue presented on this motion, being jurisdictional in nature, must be addressed as a threshold matter. *Shelton v. Commissioner*, 63 T.C. 193, 194–195 (1974).

There is no question that this Court is a court of limited authority and may exercise jurisdiction only to the extent expressly provided by Congress. Sec. 7442; *Medeiros v. Commissioner*, 77 T.C. 1255, 1259 (1981); *Wilt v. Commissioner*, 60 T.C. 977, 978 (1973). We nevertheless have jurisdiction to determine whether we have jurisdiction. *Hazim v. Commissioner*, 82 T.C. 471 (1984); *Brannon's of Shawnee, Inc. v. Commissioner*, 69 T.C. 999, 1001 (1978). Section 6213 confers jurisdiction on this Court, upon the issuance of a statutory notice of deficiency and the timely filing of a petition, to redetermine deficiencies in income, estate, gift, and certain excise taxes. Secs. 6211–6212, 6214–6215; *Estate of DiRezza v. Commissioner*, 78 T.C. 19, 25 (1982).

In this case, there is no dispute that respondent issued a statutory notice of deficiency in which an underpayment of income tax was determined, or that petitioner timely filed a petition with this Court. We thus have been properly presented with subject matter within our statutorily defined jurisdic-

tion, and we clearly have the authority, as well as the duty, to consider the propriety of the determination. Secs. 6213, 7442; *Dorl v. Commissioner*, 57 T.C. 720, 721 (1972), affd. per curiam 507 F.2d 406 (2d Cir. 1974).

It was early recognized that this Court, like any court having jurisdiction over the subject matter, "must consider all matters necessary to the proper exercise of the jurisdiction." *Fidelity Trust Co. v. Commissioner*, 4 B.T.A. 411, 423 (1926). The Tax Court, that is, possesses all necessary and usual powers essential to carrying out its functions. Cf. *Goldsmith v. Board of Tax Appeals*, 270 U.S. 117, 122 (1926); *Reo Motors v. Commissioner*, 219 F.2d 610, 612 (6th Cir. 1955).

Determining the admissibility of evidence is part of the normal power of any trial court and is essential to the proper discharge of its duties. *United States v. 1617 Fourth Avenue, S.W.*, 406 F. Supp. 527, 528 (D. Minn. 1976). Indeed, this Court would be derelict in its duties if it refused to entertain questions regarding the admissibility of evidence solely on the ground that such an inquiry is not a proper function of this Court. Section 7453 specifically provides that, in general, "the proceedings of the Tax Court * * * shall be conducted * * * in accordance with the rules of evidence applicable in trials without a jury in the United States District Court of the District of Columbia."[5] Rule 143. Moreover, this Court has on numerous occasions recognized its authority to inquire into the question of admissibility of evidence. See, e.g., *Riland v. Commissioner*, 79 T.C. 185, 208 (1982); *Guzzetta v. Commissioner*, 78 T.C. 173, 174–184 (1982); *Perillo v. Commissioner*, 78 T.C. 534, 537–541 (1982); *Black Forge, Inc. v. Commissioner*, 78 T.C. 1004, 1010–1013 (1982); *Nicholas v. Commissioner*, 70 T.C. 1057, 1062–1063 (1978); *Gordon v. Commissioner*, 63 T.C. 51, 63–72 (1974), affd. per curiam on this point 572 F.2d 193 (9th Cir. 1977); *Suarez v. Commissioner*, 58 T.C. 792, 801–814 (1972). It is therefore clear that this Court has jurisdictional authority to entertain questions concerning the admissibility of evidence in proceedings pending before it, as a necessary incident to its statutory power to redetermine proposed income tax deficiencies.

---

[5]In present-day terms, this means that this Court is governed by the Federal Rules of Evidence, Pub. L. 93–595, 88 Stat. 1926, effective Jan. 2, 1975.

Respondent contends that the fact that the grand jury materials were acquired by the Internal Revenue Service pursuant to the rule 6(e) order, issued upon alleged full disclosure of the facts, should somehow alter the above well-established rules and should operate to deprive this Court of *jurisdiction* to consider petitioner's present motion. Respondent thus states on brief that "The Tax Court lacks jurisdiction to review the validity of a Rule 6(e) order." Respondent errs both in his jurisdictional conclusion as well as his assertion regarding the scope of inquiry necessitated by petitioner's present motion.

First, as discussed above, determinations regarding the admissibility of evidence in proceedings before this Court are an inherent power incident to this Court's duty to redetermine proposed income tax deficiencies. The fact that a determination of admissibility of evidence involves an inquiry into the propriety of actions of other courts, or other branches of Government, has never been thought to deprive this or any other Federal court of the authority to exercise that power, and this is true whether or not the ground alleged in favor of suppression is that a Federal court applied improper standards of Federal statutory or constitutional law in issuing a disclosure order or search warrant. See, e.g., *Perillo v. Commissioner, supra* at 537–541 (where we examined the validity of a Federal District Court order authorizing a wiretap pursuant to 18 U.S.C. sec. 2516(1)(1982)); *Nicholas v. Commissioner, supra* at 1062–1063 (where we examined the validity of a search warrant issued by a Federal District Court authorizing a search of a taxpayer's premises); *Gordon v. Commissioner*, 63 T.C. at 65–72 (where we examined the validity of a search warrant issued by a U.S. commissioner authorizing the search of a taxpayer's premises). Thus, our *jurisdiction* to consider the propriety of respondent's receipt of the grand jury materials is not, in the context of this case, vitiated by the interposition of the rule 6(e) order of the District Court for the Eastern District of New York.

Respondent on brief relies principally upon language contained in *Matter of Grand Jury Proceedings, Miller Brewing Co.*, 687 F.2d 1079 (7th Cir. 1982), vacated in part 717 F.2d 1136 (7th Cir. 1983), and *Conforte v. Commissioner*, 692 F.2d 587 (9th Cir. 1982), affg. in part, revg. and remanding in part

74 T.C. 1160 (1980), in support of his contention that this Court is without jurisdiction to review the present rule 6(e) order. Respondent's reliance upon *Miller Brewing Co.* is misplaced, and we refuse to accord to *Conforte* the effect for which respondent contends.

In *Miller Brewing Co.*, the Court of Appeals for the Seventh Circuit was presented with a question concerning the propriety of certain transfer procedures utilized by a Federal District Court in its consideration of a rule 6(e) motion. Under the procedure adopted by the District Court, the Tax Court would have been required to make a determination ab initio whether to disclose under rule 6(e) certain grand jury materials. The Court of Appeals rejected this procedure in favor of one requiring the District Court, rather than the Tax Court, to make the initial rule 6(e) disclosure determination. In so holding, the court stated (p. 1097) that "it is not at all clear that the [T]ax [C]ourt has the power to *order disclosure* of Federal grand jury materials." (Emphasis supplied.) We do not dispute the accuracy of this statement. See rule 6(e)(3)(D), Fed. R. Crim. P.; cf. *In re State of Illinois Petition to Inspect & Copy Grand Jury Materials*, 659 F.2d 800, 803 (7th Cir. 1981).

However, the inquiry here does not involve an ab initio rule 6(e) disclosure determination. Rather, we must solely decide, as a necessary incident to our redetermination of the disputed deficiency before us, the admissibility of evidence acquired under the rule 6(e) order. The Seventh Circuit, itself, acknowledged in *Miller Brewing Co* (p. 1092 n. 16) that "The applicability of grand jury secrecy and the admissibility of grand jury material *as evidence* are distinct inquiries" (emphasis supplied) and further recognized (pp. 1097–1098) that "the [T]ax [C]ourt, in passing upon the admissibility of evidence, has decided questions of Fourth Amendment law and claims of abuse of grand jury process. *Ryan v. Commissioner*, 568 F.2d 531, 538 n. 2 (7th Cir. 1977), cert. denied 439 U.S. 820 (1978). Its basic work—determining the correctness of deficiency assertions—cannot be accomplished in a vacuum. In order to properly interpret the applicable statutes, the court must resort to other bodies of law." The Seventh Circuit therefore clearly recognizes this Court's authority to determine issues concerning a rule 6(e) order in the context of passing upon the admissibility of evidence.

In *Conforte,* the Ninth Circuit Court of Appeals was presented with a situation substantially different than that presented here. The taxpayer in *Conforte* had actual knowledge of the granting of a rule 6(e) order at the time the order was issued, but did not seek to intervene in the District Court proceeding. *In re Proceedings before the Federal Grand Jury for the District of Nevada,* 643 F.2d 641, 642 (9th Cir. 1981). Instead, 5 days after the rule 6(e) order was entered, the taxpayer sought to appeal to the Ninth Circuit. The Ninth Circuit dismissed the appeal on the ground that the taxpayer, not having sought to become a party to the proceeding below, had no standing to appeal. *In re Proceedings before the Federal Grand Jury for the District of Nevada, supra* at 642–643.

Following the dismissal, respondent determined a deficiency in the taxpayer's income taxes. The taxpayer petitioned this Court, and moved in this Court to suppress all the grand jury materials on the ground of grand jury abuse. This Court considered the motion, and denied it, but stated that the taxpayer could object on an item by item basis with respect to the admissibility of the grand jury materials. The taxpayer appealed. On appeal, the Ninth Circuit held that the taxpayer, having had knowledge of the prior rule 6(e) order at the time it was issued, and having failed to seek to intervene, had waived any right to challenge collaterally the validity of the order. *Conforte v. Commissioner, supra.* The court stated (692 F.2d at 594):

By failing to seek intervention in the district court or petitioning that court for relief from the disclosure order, [the taxpayer] gave up the opportunity to challenge directly the validity of the district court's order. We hold she cannot do so collaterally before the Tax Court. * * *

The facts in *Conforte* are fundamentally different than those presented here. In this case, petitioner had no knowledge of the District Court's rule 6(e) order until after disclosure had been accomplished, and the deficiency notice was issued. She therefore cannot be deemed to have waived any remedy which was available to her which might have prevented the disclosure from occurring. The primary holding of *Conforte* is therefore without effect in this case.

But respondent points out that, in the course of its opinion, the Ninth Circuit in *Conforte* stated (p. 594) that "[The

taxpayer] has presented no authority for the proposition that the Tax Court, a court of limited jurisdiction * * * can review, even collaterally, the validity of an order of a United States district court."

This statement of the Ninth Circuit was dictum and was not necessary to the court's holding in *Conforte*. Accordingly, we do not consider ourselves bound by that language. Moreover, with respect, we feel that the statement was not well considered. As discussed *supra*, the fact that a determination of admissibility of evidence in this Court involves an inquiry into the propriety of actions of other Federal courts has never been thought to deprive this Court of *jurisdiction* to consider such admissibility. See *Perillo v. Commissioner*, 78 T.C. at 537–541; *Nicholas v. Commissioner*, *supra* at 1062–1063. Although we may be reluctant in certain situations to undertake a de novo review of discretionary actions of Federal District Courts as a general proposition, this reluctance is not premised upon jurisdictional concerns. (See discussion, *infra*.) Finally, and most importantly in the context of this case, the Ninth Circuit's dictum in *Conforte* simply has no applicability to this case, even if we were to assume it had validity. Petitioner here does not ask us to undertake a de novo review of the present rule 6(e) order under the jurisprudence as it existed at the time the order was issued. (This point is discussed, *infra*.) Accordingly, respondent's attempt to rely on this case must be rejected. We therefore hold that consideration of petitioner's present motion falls within our jurisdictional limits.

## B. OTHER POSSIBLE IMPEDIMENTS TO OUR REVIEW

Of course, our conclusion on this jurisdictional point does not automatically render subject to attack in this Court every discovery or other order issued by a Federal court. In many cases, taxpayers will be bound by prior final orders or judgments under principles of res judicata, waiver, or collateral estoppel, and will therefore be precluded from contesting the validity of such prior orders or judgments in this Court. However, in this case, the rule 6(e) order of the District Court was issued ex parte, and without petitioner's knowledge. Under these circumstances, respondent has no basis for invocation of res judicata, waiver, or collateral estoppel. *Freuler v. Helvering*, 291 U.S. 35, 43 (1934); cf. *Commissioner v.*

*Estate of Bosch,* 387 U.S. 456, 462–463 (1967); *Commissioner v. Sunnen,* 333 U.S. 591, 597 (1948).

Moreover, if petitioner in this case were asking us to directly review de novo the validity of the District Court's rule 6(e) order, we might in any event be reluctant to consider suppression arguments based solely upon allegations that the District Court applied improper standards of Federal statutory law in issuing the order, under the jurisprudence as it existed at the time the order was issued. See *Estate of Temple v. Commissioner,* 65 T.C. 776, 783 (1976). Such reluctance would not be premised upon any concerns that we lack jurisdictional capacity to consider the issue, however; rather, it would be based upon considerations of comity and judicial efficiency, combined with our recognition that this Court does not deal with "the institution of the grand jury with the frequency and expertise that a district court possesses," *Matter of Grand Jury Proceedings, Miller Brewing Co.,* 687 F.2d at 1098, and an acknowledgement that the Federal Rules of Criminal Procedure specifically make the District Courts the proper forum for applying for an order under rule 6(e). See rule 6(e)(3)(D), Fed. R. Crim. P. Under such circumstances, it might well be inappropriate for this Court to second guess a discretionary action of a District Court.

The classic statement of the principles of comity, as articulated by the Supreme Court in *Mast, Foos & Co. v. Stover Mfg. Co.,* 177 U.S. 485, 488 (1900), is as follows:

Comity is not a rule of law, but one of practice, convenience, and expediency. It is something more than mere courtesy, which implies only deference to the opinion of others, since it has a substantial value in securing uniformity of decision, and discouraging repeated litigation of the same questions. But its obligation is not imperative. If it were, the indiscreet action of one court might become a precedent, increasing in weight with each successive adjudication, until the whole country was tied down to an unsound principle. Comity persuades; but it does not command. It declares not how a case shall be decided, but how it may with propriety be decided. It recognizes the fact that the primary duty of every court is to dispose of cases according to the law and the facts; in a word, to decide them right. In doing so, the judge is bound to determine them according to his own convictions. If he be clear in those convictions, he should follow them. It is only in cases where, in his own mind, there may be a doubt as to the soundness of his views that comity comes in play and suggests a uniformity of ruling to avoid confusion, *until a higher court has settled the law.* * * * [Emphasis supplied.]

However, the posture of this case does not require that we undertake de novo review of the District Court's rule 6(e) order under the jurisprudence as it existed at the time the order was issued. Contrast *Estate of Temple v. Commissioner, supra* at 783. The Supreme Court, in *Baggot* and *Sells Engineering, Inc.*, has now "settled the law" regarding the proper standards under which a District Court may legitimately exercise its discretionary authority to release grand jury information, and the only issue presented to this Court is whether the standards announced should be applied retroactively to invalidate a prior order, concededly not in compliance with such standards, which was issued without the benefit of the Supreme Court's clarification of the law. In this posture, considerations of comity are simply inapplicable. Certainly, if the Supreme Court in *Baggot* and *Sells* had mandated that the rules announced therein were to be applied retroactively to invalidate all rule 6(e) orders, whether final or nonfinal, when those cases were decided, and which were previously issued in violation of those rules, it would be the duty of every Federal court to follow such a mandate, and not earlier contrary lower court decisions, under mistaken notions of comity. Cf. *United States v. Contreras*, 667 F.2d 976, 979 (11th Cir. 1982), cert. denied 459 U.S. 849 (1982).

The resolution of the retroactivity question, at least insofar as it applies to this case, was left unanswered by the Supreme Court, and we must therefore consider this issue for purposes of disposing of the present motion. Such an inquiry, because of its potential impact on the evidentiary and procedural questions in the case before us, is clearly within our province (*Romanelli v. Commissioner*, 54 T.C. 1448, 1461 (1970),[6] revd.

---

[6]Although this Court will not generally look behind a statutory notice of deficiency to examine the evidence used or the propriety of respondent's conduct in determining the deficiency (*Scar v. Commissioner*, 81 T.C. 855 (1983); *Riland v. Commissioner*, 79 T.C. 185, 201 (1982); *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 327 (1974)), we have recognized an exception to this general rule in so-called illegal income cases "involving unreported income where the respondent introduced no substantive evidence but rested on the presumption of correctness and the petitioner challenged the notice of deficiency on the grounds that it was arbitrary." *Jackson v. Commissioner*, 73 T.C. 394, 401 (1979). See also *Llorente v. Commissioner*, 649 F.2d 152, 156 (2d Cir. 1981), affg. in part and revg. in part 74 T.C. 260 (1980). In this case, respondent's deficiency determination is based upon an allegation that Henry Kluger received unreported income from illegal drug trafficking, and this determination was based solely upon information contained in the grand jury materials. In view of our disposition of the issue regarding the retroactive effect of *Baggot* and *Sells Engineering, Inc., infra*, we do not have to decide whether suppression of evidence would be an appropriate sanction for the violation of a taxpayer's rights, as alleged here (cf. *United States v. Janis*, 428 U.S. 433 (1976); *Tirado v. Commissioner*, 689 F.2d 307 (2d Cir. 1982), affg. 74 T.C. 14

and remanded on other grounds 466 F.2d 872 (7th Cir. 1972)).[7]

## II. Are the Rules of Baggot and Sells To Be Applied Retroactively?

The first question to be decided, then, is whether the Supreme Court's decisions in *Baggot* and *Sells Engineering, Inc.*, operate retroactively to invalidate the final order of the District Court, which was issued prior to the announcement by the Supreme Court of its decisions, and which was founded upon rule 6(e)(3)(C)(i), Fed. R. Crim. P. For the reasons that follow, we have concluded that *Baggot* and *Sells Engineering, Inc.*, do not affect the validity of the rule 6(e) order in this case. We preface our consideration of this issue with an examination of the rule and judicial events leading up to the decisions in *Baggot* and *Sells Engineering, Inc.*, as well as the holdings therein.

### A. THE DECISIONAL BACKGROUND

Rule 6(e)(2) incorporates the general rule that proceedings before a grand jury shall remain secret. The rule, as discussed by the Supreme Court in *Baggot* and *Sells Engineering, Inc.*, without certain amendments effective as of August 1, 1983, reads as follows:

(e) Recording and Disclosure of Proceedings.

\* \* \* \* \* \* \*

(2) General Rule of Secrecy.—A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not

---

(1980)), nor whether, if granted, such suppression would ipso facto render respondent's statutory notice "naked," with a resultant shift to respondent of the burden of going forward with the evidence (see *Jackson v. Commissioner, supra,* and *Llorente v. Commissioner, supra*). On these points, we intimate no opinion herein, except to say that we would have the power to rule.

[7]In *Romanelli* we specifically considered petitioner's contention that the Supreme Court's decision in *Marchetti v. United States,* 390 U.S. 39 (1968), applied retroactively to invalidate a search warrant on the ground that *Marchetti* declared unconstitutional the statute on which the search warrant was based. We decided that *Marchetti* was not retroactive in application. Although our decision in that case was reversed and remanded by the Seventh Circuit Court of Appeals, such reversal was based on other grounds. The Seventh Circuit did not call into question our consideration of the retroactivity question, and in fact agreed with our resolution of that particular issue. See *Romanelli v. Commissioner,* 466 F.2d 872, 877–878 (7th Cir. 1972).

disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.

The general rule of secrecy provided by rule 6(e)(2) is subject to certain exceptions provided in rule 6(e)(3). The only exception provided in rule 6(e)(3) which is of relevance in this case is the exception contained in rule 6(e)(3)(C)(i), which provides as follows:

(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—
(i) when so directed by a court preliminarily to or in connection with a judicial proceeding;

\*     \*     \*     \*     \*     \*     \*

If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time, and under such conditions as the court may direct.

Prior to the Supreme Court's announcement of its decisions in *Baggot* and *Sells Engineering, Inc.*, the Government took the position that rule 6(e)(3)(C)(i) authorized judicially supervised disclosure of grand jury materials to the Internal Revenue Service for purposes of use in the audit process, prior to the time a deficiency notice was issued or litigation in respect of any civil tax determination was commenced. The Government also believed that no showing of "particularized need" was necessary prior to the issuance of an order under rule 6(e)(3)(C)(i). See Internal Revenue Manual sec. 4565–1:(4) (9/22/82). Thus, the Government interpreted the "preliminarily to \* \* \* a judicial proceeding" requirement of rule 6(e)(3)(C)(i) as being satisfied at the audit stage of a civil tax investigation, reasoning that "legislative history reflects that \* \* \* Rule 6(e) is not intended to preclude the use of grand jury developed evidence for civil law enforcement purposes." I.R.M. sec. 4565.1:(4) (9/22/82).

The Government's interpretation of the requirements of rule 6(e)(3)(C)(i), both with respect to its reading of the "preliminarily to" requirement, and with respect to its belief that no "particularized need" be demonstrated for a successful rule 6(e) motion by the Government, enjoyed initial judicial

sanction. In *In re December 1974 Term Grand Jury Investigation*, 449 F. Supp. 743 (D. Md. 1978), the court, in the face of taxpayer contentions to the contrary, upheld the Government's interpretation of the rule. With respect to the "in connection with or preliminarily to a judicial proceeding" requirement of the rule, the court stated (p. 750):

as long as the material to which disclosure is sought was obtained in a bona fide, good-faith grand jury proceeding directed toward ultimate criminal prosecution, there is no legitimate end to be served by requiring the government in a later civil action, or in connection with a prospective or existing later civil action, to again assemble and have produced testimony and documentary material which already exists by virtue of having been produced to the grand jury. [Fn. ref. omitted.]

With respect to the showing required for the issuance of an order under rule 6(e)(3)(C)(i) upon the Government's motion, the court rejected the "particularized need" standard argued by the taxpayers, and stated (p. 751):

a general description of the materials sought to be disclosed should be provided [so that a court could determine whether those materials have] some rational connection with a specific existing or contemplated judicial proceeding as envisioned by * * * [the rule].

These same positions were subsequently adopted by two Circuit Courts of Appeals, and certiorari was denied in one such case by the Supreme Court. See *In re Judge Elmo B. Hunter's Special Grand Jury*, 667 F.2d 724 (8th Cir. 1981); *In re Grand Jury Subpoenas, April, 1978, at Baltimore*, 581 F.2d 1103 (4th Cir. 1978), cert. denied sub nom. *Fairchild Industries, Inc. v. Harvey, United States District Judge*, 440 U.S. 971 (1979).

However, other courts which had considered these issues had reached contrary results. Addressing the issue whether the determination of deficiencies by the Internal Revenue Service were "preliminarily to or in connection with a judicial proceeding" within the intendment of rule 6(e)(3)(C)(i), two District Courts in the Sixth Circuit concluded that such a process was purely administrative and therefore did not satisfy the requisites of rule 6(e)(3)(C)(i) for court-ordered disclosure. The Government's motions under rule 6(e) were accordingly denied. See *In re April 1977 Grand Jury Proceed-*

*ings,* 506 F. Supp. 1174 (E.D. Mich. 1981); *In re 1978–1980 Grand Jury Proceedings,* 503 F. Supp. 47 (N.D. Ohio 1980).

Prior to the respective Courts of Appeals opinions in *Baggot* and *Sells Engineering, Inc.,* no Court of Appeals had specifically adopted the approach of the two District Courts in the Sixth Circuit in the context of rule 6(e) disclosure motions.[8] However, certain courts did, prior to the Supreme Court's decision in *Sells Engineering, Inc.,* require a demonstration by the Government of a higher standard of particularized need than that adopted by the Eighth and Fourth Circuits in the decisions cited *supra.* See *Matter of Grand Jury Proceedings, Miller Brewing Co., supra; In re U.S. Order Pursuant to Provisions of Rule 6(e),* 505 F. Supp. 25 (W.D. Pa. 1980).

Thus, when the issues, (a) whether a civil tax audit was "preliminarily to a judicial proceeding" within the intendment of rule 6(e)(3)(C)(i), and (b) whether the Government was required to demonstrate "particularized need" for the grand jury material requested prior to the granting of a motion under that rule, were presented to the Seventh Circuit Court of Appeals in *Baggot* and the Ninth Circuit Court of Appeals in *Sells Engineering, Inc.,* respectively, the state of the law concerning these issues was divided and unsettled among the circuits and lower courts, and, of course, the Supreme Court had not previously undertaken to resolve either of these issues.[9] Indeed the evolution of these cases demonstrates

---

[8]In an unpublished opinion, however, the Fifth Circuit Court of Appeals may have effectively reached a result similar to that of the District Courts in the Sixth Circuit, by summarily affirming a sealed District Court order denying release of grand jury materials sought by the Internal Revenue Service for a civil tax investigation. *In re Grand Jury for the Northern District of Alabama (Drummond Coal Co.),* docket No. 81–7976 (July 20, 1981). Additionally, other cases involving other administrative agencies had held that certain types of administrative investigations were not "preliminary to or in connection with a judicial proceeding." See, e.g., *In re J. Ray McDermott & Co., Inc.,* 622 F.2d 166, 170–172 (5th Cir. 1980) (Federal Energy Regulatory Commission proceedings); *In re Grand Jury Proceedings,* 309 F.2d 440, 443–444 (3d Cir. 1962) (Federal Trade Commission investigation); *In re Grand Jury Matter,* 495 F. Supp. 127 (E.D. Pa. 1980) (investigation by State Board of Medical Examiners).

[9]The Supreme Court had, however, recently decided that *private* (i.e., non-Government) litigants requesting rule 6(e) disclosure orders must be required to demonstrate "particularized need" for the grand jury information requested. See *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211 (1979). This "particularized need" standard was described in *Douglas Oil* (pp. 222–223) as follows:

"Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed * * *

"It is clear * * * that disclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy, and that the burden of demonstrating this balance rests

differences of opinion even within the circuits that decided them.

In *Baggot*, a Federal grand jury had been empaneled under the jurisdiction of the District Court for the Northern District of Illinois to investigate certain criminal violations of the Commodities Exchange Act and the Internal Revenue Code, and James E. Baggot ultimately became a target of such investigation and was subpoenaed to appear before the grand jury. On June 24, 1972, James Baggot pleaded guilty to two misdemeanor violations of the Commodities Exchange Act. Subsequently, the U.S. attorney filed a motion in the District Court under rule 6(e)(3)(C)(i), Fed. R. Crim. P., for a disclosure order relating to materials and transcripts of the grand jury for purposes of use by the Internal Revenue Service in a civil tax audit of James Baggot. The District Court, although holding that a civil tax investigation was not "preliminarily to or in connection with a judicial proceeding," nevertheless granted disclosure of the grand jury materials pursuant to its "general supervisory powers" over the grand jury. The order was appealed to the Seventh Circuit.

A divided Seventh Circuit Court of Appeals reversed the District Court's disposition of the rule 6(e) motion. See *In re Special February, 1975 Grand Jury (Baggot)*, 662 F.2d 1232 (7th Cir. 1981). The court first rejected the District Court's reliance upon its "general supervisory powers" in granting the rule 6(e) motion. Additionally, the court held that disclosure of the grand jury materials to the Internal Revenue Service for use in its conduct of a civil tax audit did not satisfy the requirements of rule 6(e)(3)(C)(i), because such a disclosure would not be directed "preliminarily to or in connection with a judicial proceeding" as required by the rule. The court stated (pp. 1238–1239):

the present Internal Revenue Service civil investigation of Baggot's possible additional tax liabilities is too embryonic, speculative, and uncertain to firmly say that it is "preliminarily to" a judicial proceeding. [Citation omitted.]

---

upon the private party seeking disclosure. It is equally clear that as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification. * * * In sum, * * * the court's duty in a case of this kind is to weigh carefully the competing interests in light of the relevant circumstances and the standards announced by this Court. And if disclosure is ordered, the court may include protective limitations on the use of the disclosed material * * * [Fn. refs. and citations omitted.]"

The Internal Revenue Service sought certiorari, and it was granted 457 U.S. 1131 (1982).

On June 30, 1983, the Supreme Court released its opinion in *Baggot* holding that an Internal Revenue Service civil tax audit is not conducted "preliminarily to or in connection with a judicial proceeding" within the meaning of rule 6(e)(3)(C)(i), and therefore no disclosure of grand jury materials is permitted for such purposes under the rule. The majority in *Baggot* stated (463 U.S. at ____):

the Rule contemplates only uses related fairly directly to some identifiable litigation, pending or anticipated. Thus, it is not enough to show that some litigation may emerge from the matter in which the material is to be used, or even that litigation is factually likely to emerge. The focus is on the *actual use* to be made of the material. If the primary purpose of disclosure is not to assist in preparation or conduct of a judicial proceeding, disclosure under (C)(i) is not permitted. [Citation omitted; emphasis in original.]

In *Sells Engineering, Inc.*, a grand jury was empaneled to investigate whether Sells Engineering, Inc., and certain of its officers should be prosecuted for an alleged scheme to defraud the Government by underpaying taxes. As the result of the grand jury investigation, the officers ultimately pleaded guilty to one count of conspiracy to defraud and all other charges were dismissed pursuant to plea bargaining.

In the interim, the Civil Division of the Justice Department moved in the District Court for an order releasing the grand jury's transcripts for purposes of determining whether cause existed to file suit against Sells Engineering, Inc., under the False Claims Act, 31 U.S.C. sec. 231 et seq., for its alleged use of inflated costs in negotiated contracts. This motion was made pursuant to rule 6(e)(3)(A)(i). This subsection of rule 6(e) allows disclosure of grand jury materials as a matter of course, without any court order, to "an attorney for the government for use in the performance of such attorney's duty." The District Court granted the Government's motion, concluding that attorneys in the Civil Division were entitled to disclosure as a matter of right under rule 6(e)(3)(A)(i). Sells Engineering, Inc., appealed.

The Ninth Circuit rejected the holding of the District Court that Civil Division attorneys could obtain access to grand jury materials as a matter of right under rule 6(e)(3)(A)(i), warning that such disclosure would encourage the use of the grand jury

as a "tool of civil discovery." See *In re Grand Jury Investigation No. 78–184 (Sells, Inc.)*, 642 F.2d 1184, 1190 (9th Cir. 1981). The court held that grand jury disclosure could be made to Civil Division attorneys only pursuant to court direction under rule 6(e)(3)(C)(i). Moreover, the court ruled that, even where the Government is the moving party under rule 6(e)(3)(C)(i), release of such materials by the court could be made only upon a showing by the Government of "particularized need" for the materials. The court thus adopted the "particularized need" standard with respect to Government movants, although that standard had theretofore been specifically adopted by the Supreme Court only with respect to private litigants. See *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211 (1979), in note 9 *supra*.

The Government petitioned for certiorari in the Supreme Court, and it was granted. 456 U.S. 960 (1982). The Supreme Court affirmed the Ninth Circuit, holding that disclosure of grand jury materials under rule 6(e)(3)(A)(i) is "limited to use by those attorneys who conduct the criminal matters to which the materials pertain." See 463 U.S. at ____. Thus, the release of grand jury materials to Civil Division attorneys for purposes of prosecuting civil claims could be made only upon application to a court pursuant to rule 6(e)(3)(C)(i).

In its opinion which has more direct relevance to the present case, the Court additionally held that even where the Government is the moving party under rule 6(e)(3)(C)(i), a "strong showing of particularized need for grand jury materials" is required before the release of any grand jury materials will be permitted. *United States v. Sells Engineering, Inc.*, 463 U.S. at ____. The Court thus adopted the Seventh Circuit view, and imposed the same standards for disclosure under rule 6(e)(3)(C)(i) that it had theretofore applied only with respect to private litigants in *Douglas Oil Co. v. Petrol Stops Northwest, supra*. In reaching this conclusion, the Court emphasized the general purposes and policies of grand jury secrecy mandating this result, and stated that—

if we were to agree with the Government that disclosure is permissible if the grand jury materials are "relevant to matters within the duties of the attorneys for the government," * * * a (C)(i) court order would be a virtual rubber stamp for the Government's assertion that it desires disclosure. [463 U.S. at ____.]

The Court emphasized, however, that where the Government is the movant, different considerations exist than where a private party is the movant. The Court stated (463 U.S. at ____):

The *Douglas Oil* standard is a highly flexible one, adaptable to different circumstances and sensitive to the fact that the requirements of secrecy are greater in some situations than in others. * * * For example, a district court might reasonably consider that disclosure to Justice Department attorneys poses less risk of further leakage or improper use than would disclosure to private parties or the general public. Similarly, we are informed that it is the usual policy of the Justice Department not to seek civil use of grand jury materials until the criminal aspect of the matter is closed. Cf. *Douglas Oil*, 441 U.S. at 222–223. And "under the particularized need standard, the district court may weigh the public interest, if any, served by disclosure to a governmental body * * *" [Citations omitted.]

Analysis of the Supreme Court's holdings in *Baggot* and *Sells Engineering, Inc.*, makes it clear that the rule 6(e) order herein does not satisfy the criteria announced in those cases. The *Baggot* standard was not satisfied because the order, when issued, was not issued " in connection with or preliminarily to a judicial proceeding," and respondent has conceded as much in this case. Moreover, it is clear that the District Court did not require the Government to demonstrate "particularized need" for the grand jury materials prior to issuing the order. Accordingly, the *Sells Engineering, Inc.*, standard was not satisfied. The question we must decide is whether *Baggot* and *Sells Engineering, Inc.*, apply retroactively to invalidate the rule 6(e) order. If so, we must then decide whether the relief sought by petitioner in the present motion is appropriate in the circumstances.

## B. THE RULES OF RETROACTIVITY

Retroactive application of a Supreme Court decision is not compelled, constitutionally or otherwise. *Great Northern R. Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 364 (1932). The Supreme Court has long recognized that "the interests of justice" and "the exigencies of the situation" may argue against imposing a new decision retroactively, whether the new rule is of constitutional or nonconstitutional dimensions. *Linkletter v. Walker*, 381 U.S. 618, 628 (1965); *Halliday v. United States*, 394 U.S. 831, 832 (1969).

The basic principles of retroactivity in civil[10] cases were established by the Supreme Court in *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971). The criteria guiding resolution of the retroactivity question were stated as follows:

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must * * * weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." [404 U.S. at 106–107; citations omitted.]

Examining *Baggot* and *Sells Engineering, Inc.*, in light of the above factors,[11] we conclude that the standards of those cases should not be applied retroactively to invalidate the final rule 6(e) order herein, on collateral attack.[12]

---

[10]Although the decisions in *Baggot* and *Sells Engineering, Inc.*, interpret the requirements of a Federal Rule of Criminal Procedure, such decisions affect an exclusively civil concern. Accordingly, we apply the standards of retroactivity tailored to civil cases.

[11]It has been suggested in a recent article that a slightly different approach, which was adopted by a majority of the Supreme Court in *United States v. Johnson*, 457 U.S. 537 (1982), should be applied in determining the retroactive effect of *Baggot*. See Bender & Bender, "Is the Supreme Court's decision in Baggot retroactive in application?" 60 J. Tax. 138–144 (March 1984). In *Johnson*, the Supreme Court held that a decision construing the Fourth Amendment that was not a "clear break with the past" is to be applied to all criminal convictions not yet final when the decision was handed down. The Court, however, carefully limited its holding as follows:

"First, our decision today does not affect those cases that would be clearly controlled by our existing retroactivity precedents. Second, because respondent's case arises on direct review, we need not address the retroactive reach of our Fourth Amendment decisions to those cases that still may raise Fourth Amendment issue on collateral attack. Third, we express no view on the retroactive application of decisions construing any constitutional provision other than the Fourth Amendment. * * * [457 U.S. at 562; citation and fn. refs. omitted.]"

These limitations clearly make *Johnson* inapplicable to this civil case, which is controlled by prior precedent and arises on collateral attack of a final District Court order. The analysis adopted by the Supreme Court in *Solem v. Stumes*, 465 U.S. ____ (1984), its most recent case considering the retroactivity question in a criminal context, is directly analogous in every relevant respect to that employed in *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971), and is the proper analysis to be applied in this case.

[12]At a minimum, a determination of nonretroactivity of a Supreme Court decision means that such decision is not to be applied on collateral attack of a final order. Cf. *Solem v. Stumes*, 465 U.S. ____ (1984). For purposes of this case, no more need be decided by this Court concerning *Baggot* or *Sells Engineering, Inc.* Various Supreme Court cases establish the nonretroactive effect of decisions at different places. For example, some cases have been applied only to defendants whose cases were not final when a law-changing rule was announced. E.g., *United States v. Johnson*, 457

The first and threshold inquiry under *Chevron Oil* is whether the pertinent holdings of the Supreme Court in *Baggot* and *Sells Engineering, Inc.*, established a new principle of law, either by overruling clear Supreme Court precedent, or by deciding an issue of first impression in the *Supreme Court*[13] whose resolution was not clearly foreshadowed by prior Supreme Court cases. The ultimate question, to which our analysis of this factor is directed, is whether enforcement authorities and courts have justifiably relied on the prior interpretation of rule 6(e) which was different from that announced in *Baggot* and *Sells Engineering, Inc. Solem v. Stumes*, 465 U.S. ____ (1984).

It is clear that the Supreme Court's decisions in *Baggot* and *Sells Engineering, Inc.*, did not overrule prior Supreme Court precedent in deciding the "preliminarily to or in connection with a judicial proceeding" issue or the "particularized need" issue. Both of these issues were issues of first impression in the Court. Nor did these decisions overrule a near-unanimous body of lower-court case law on these issues. Thus, *Baggot* and *Sells Engineering, Inc.*, are not the types of cases that have been held by the Supreme Court to be "almost automatically nonretroactive." *Solem v. Stumes, supra* at ____.

Nevertheless, the pertinent holdings in *Baggot* and *Sells Engineering, Inc.*, did establish new rules. Thus the Court in *Baggot* stated (463 U.S. at ____):

---

U.S. 537 (1982); *Linkletter v. Walker*, 381 U.S. 618 (1965). Others have been applied only to defendants whose trial had not yet begun when the decision was rendered (*Johnson v. New Jersey*, 384 U.S. 719 (1966)) or to those whose rights were violated after the new decision was announced. E.g., *United States v. Peltier*, 422 U.S. 531 (1975). Thus, whether *Baggot* or *Sells Engineering, Inc.*, should affect rule 6(e) disclosure orders, issued prior to those decisions, which are on attack through direct appeal presents a different inquiry than that presented herein, and is an issue we do not need to resolve in this case and upon which we express no opinion. But see *In re Sells v. United States*, 719 F.2d 985 (9th Cir. 1983), revg. and remanding an unreported District Court decision.

[13]In this regard, we note our disagreement with the analysis adopted in a recent District Court case. See *Stein v. United States*, an unreported case, docket No. 83–1492 (D. N.J. 1984). In that case, the District Court concluded that *Baggot* is to be retroactive in effect. The Court premised this conclusion upon its finding that *Baggot* did not represent a "clear break" with past precedent, or constitute a case of first impression. Accordingly, the Court found the threshold test of *Chevron Oil* not to be satisfied. However, in reaching its conclusion that *Baggot* did not constitute a case of first impression, the District Court considered the existence of prior *lower court* precedent which adopted the analysis ultimately adopted by the Supreme Court in *Baggot* to be dispositive. Upon this point, we disagree. The threshold inquiry of whether a case is one of first impression is clearly intended to focus on the Supreme Court's prior precedent (see *Solem v. Stumes*, 465 U.S. at ____), *not* on the State of lower court decisions.

in our previous cases under Rule 6(e), we have not had occasion to address [the "preliminarily to or in connection with a judicial proceeding"] * * * requirement in detail, focusing instead on the requirement that the moving party show particularized need for access to grand jury materials. The two requirements, though related in some ways, are independent prerequisites to (C)(1) disclosure. [Citations and fn. ref. omitted.]

Moreover, although the Court had previously decided in *Douglas Oil Co. v. Petrol Stops Northwest, supra,* that *private parties* seeking access to grand jury materials under rule 6(e)(3)(C)(i) must demonstrate "particularized need" for the materials, no such standard had been imposed in Supreme Court cases prior to *Sells Engineering, Inc.,* when the information was sought by the Government for use in a civil tax investigation (*United States v. Sells Engineering, Inc., supra* at _____).[14]

Thus, the inquiry cannot end upon a finding that *Baggot* and *Sells Engineering, Inc.,* did not overrule clear past Supreme Court or lower court precedent. The issues were clearly ones of first impression in the Supreme Court and we must therefore additionally consider whether the new rules announced in these cases were "clearly foreshadowed" within the intendment of *Chevron Oil.*

Whether the new rules announced in *Baggot* and *Sells Engineering, Inc.,* were "clearly foreshadowed" depends upon whether the rulings in those cases were "necessary consequences" of prior Supreme Court rulings. See *Solem v. Stumes, supra* at _____.

We think it clear that the rule announced by the Supreme Court in *Baggot* was not a necessary consequence of any prior Supreme Court decision. Indeed, as indicated above, the Supreme Court in *Baggot* itself acknowledged that it did not have prior occasion to consider the issue resolved therein. See 463 U.S. _____.

Nor do we think that the pertinent holding in *Sells Engineering, Inc.,* was a necessary consequence of prior Supreme Court decisions. It is true that, prior to its decision in *Sells Engineering, Inc.,* and prior to the issuance of the rule 6(e)

---

[14]Although the Supreme Court, earlier in the same term that decided *Sells Engineering, Inc.,* did hold the "particularized need" standard to apply to state attorneys general in *Illinois v. Abbott & Associates, Inc.,* 460 U.S. 557 (1983), *Abbott* was not decided until Mar. 29, 1983. The rule 6(e) order in this case was issued on the same day, and the District Court could thus not have known of that case, and it therefore need not be considered in the present analysis.

order herein, the Supreme Court in *Douglas Oil Co.* decided that a private litigant could obtain a rule 6(e) disclosure of grand jury materials only upon a showing of "particularized need." But the Court in that case carefully framed the question presented solely as: "[W]hat justification * * * must a *private party* show in order to overcome the presumption of grand jury secrecy?" (441 U.S. at 213; emphasis added), and the ultimate holding in that case responded directly to this formulation of the issue. Thus, District Courts, when considering a *private party's* request for grand jury disclosure, were instructed to weigh "the public interest in secrecy" against the *private* interest in disclosure, and to place the burden on the "private party" to justify disclosure. 441 U.S. at 223. But where the disclosure of grand jury materials is sought by the Government in furtherance of its *public* duty, the interests to be considered against grand jury secrecy are public rather than private. Moreover, the Supreme Court, itself, acknowledged in *Sells Engineering, Inc.* (463 U.S. at ____) that "disclosure to [Government] attorneys poses less risk of further leakage * * * than would disclosure to private parties or the general public."

Under these circumstances, we do not think that it can be said that the pertinent holding of the Supreme Court in *Sells Engineering, Inc.*, was a necessary consequence to its prior holding in *Douglas Oil Co.*, or other prior holdings dealing exclusively with private movants under rule 6(e). See *Dennis v. United States*, 384 U.S. 855 (1966); *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395 (1959); *United States v. Procter & Gamble*, 356 U.S. 677 (1958). Accordingly, we find that the relevant holding in *Sells Engineering, Inc.*, was not "clearly foreshadowed" within the intendment of *Chevron Oil Co.*, and the unsettled state of the law in the lower courts with respect to both of the relevant issues decided in *Baggot* and *Sells Engineering, Inc.*, bears out this reality. See also *Solem v. Stumes*, 465 U.S. at ____. Thus, it could be justifiably believed at the time the rule 6(e) order in this case was issued, that such order could legitimately be issued incident to a civil tax audit, and without requiring a showing of "particularized need," and it appears that both the Government and the District Court acted in that belief.

We must next consider whether the purposes of the new rules weigh in favor of their complete retroactive application. Complete retroactive effect of a new rule is most appropriate where the new rule is designed to enhance the accuracy of trials. Cf. *Solem v. Stumes, supra* at ____; *Williams v. United States*, 401 U.S. 646, 653 & n. 6 (1971). The announced purposes of the new rules in *Baggot* and *Sells Engineering, Inc.*, are to protect against abuses of grand jury secrecy and use of the grand jury as a tool for civil discovery. *United States v. Sells Engineering, Inc., supra* at ____. The rules are therefore prophylactic in nature and are not designed to enhance the reliability of the factfinding function. The fact that Internal Revenue Service personnel secured access to grand jury information prior to the institution of civil proceedings and without demonstrating particularized need, does not, of itself, call into question the accuracy of the materials acquired. The Supreme Court has not applied such decisions retroactively. *Michigan v. Payne*, 412 U.S. 47 (1973); *Halliday v. United States, supra*.

Moreover, the protection of grand jury secrecy sought to be achieved by application of the new rules would not be furthered by the result petitioner contends for here. Petitioner argues that the retroactive application of these rules will ultimately serve to invalidate respondent's prior use of such information in preparing the deficiency notice herein, with all the procedural consequences stemming therefrom. However, respondent's use of the grand jury materials in preparing the deficiency notice has already occurred, and retroactive application of the new rules, and petitioner's proposed results, could not serve to restore the grand jury secrecy which has already been lost. See *Estate of Temple v. Commissioner, supra* at 783. We therefore conclude that retroactive application of the pertinent rules announced in *Baggot* and *Sells Engineering, Inc.*, would not beneficially affect the accuracy of the trial in this case or substantially further the intended purposes of the new rules.

Finally, it is clear that the complete retroactive application of the new rules announced in *Baggot* and *Sells Engineering, Inc.*, would have a disruptive effect on the administration of justice. Such a conclusion would render every rule 6(e) order issued prior to *Baggot* and *Sells Engineering, Inc.*, subject to

collateral attack, and some inquiry would be required in each case to assess the substance of the claim as well as the requested remedy. Moreover, we think it would be somewhat inequitable to hold that respondent's actions in receiving and using the grand jury materials were improper, although the materials were received by him in good-faith reliance on a District Court order, issued upon full disclosure of all the facts, at a time when he could not have known the additional limitations the law would ultimately impose. Cf. *Solem v. Stumes, supra.*[15]

We therefore hold that the decisions of the Supreme Court in *Baggot* and *Sells Engineering, Inc.*, to the extent relevant herein, are not to be applied retroactively to invalidate final rule 6(e) orders under collateral attack in this Court.

Both parties herein appear to agree that a finding of nonretroactivity, in and of itself, disposes of petitioner's contention that the grand jury materials should be suppressed in these proceedings. The parties are, of course, correct. The underlying ground advanced by petitioner in support of her suppression motion is that the judicially created exclusionary rule should operate in this case to require suppression of the grand jury materials. However, imposition of the suppression sanction, under well-established exclusionary rule doctrine, is premised upon, inter alia, a finding that the evidence sought to be suppressed was obtained in violation of a specific constitutional right (see, e.g., *Weeks v. United States*, 232 U.S. 383 (1914)), or an identifiable statutory mandate (see *United States v. Blue*, 384 U.S. 251 (1966)). Where, as in this case, evidence has been acquired by Federal Government officials in good-faith reliance upon a final order of a court which was issued under standards later determined by the Supreme Court to be in violation of statutory requirements, a finding that the subsequently announced rules are not to be applied retroactively, effectively creates a legal fiction that the evidence in question was not illegally obtained. See, e.g., *United States v.*

---

[15]We have, throughout the retroactivity discussion herein, relied in part upon the analysis contained in *Solem v Stumes*, 465 U.S. ____ (1984). In that criminal case, the Supreme Court employed the same three-party retroactivity test which had been adopted in *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971). Moreover, it is clear that the interests in favor of applying retroactively the precedent involved in *Solem v. Stumes, supra,* were at least as great (and presumably greater) than those involved in this civil tax case. Accordingly, we feel confident that our reliance upon that case was fully warranted herein. See also *United States v. Leon*, 468 U.S. ____ n. 10 (1984).

*Peltier*, 422 U.S. 531 (1975); *Solem v. Stumes, supra*; note 12 *supra*. If the evidence at issue was "legally" obtained, the exclusionary rule is, by definition, simply inapplicable. The nonretroactivity precedent in the Supreme Court thus operates to avoid frustrating *reasonable* reliance on prior interpretations of statutes or the Constitution (a precondition to a finding of nonretroactivity, see text following note 13 *supra*) which might otherwise occur when a new rule is announced.[16]

In this case, therefore, our holding that the Supreme Court's decisions in *Baggot* and *Sells Engineering, Inc.*, are not to be applied retroactively means that petitioner's reliance on the exclusionary rule as the underlying basis of her suppression motion must be rejected. Accordingly, we will deny petitioner's present motion—to suppress evidence and shift the burden of going forward—on this ground alone. However, recent developments in exclusionary rule law make it clear that, at least under the facts of this case, it would be inappropriate to apply the rule even if we were to assume that the grand jury materials were obtained by respondent illegally.

### III. The Exclusionary Rule

The Supreme Court has long recognized that the exclusion of highly probative, albeit illegally obtained evidence, imposes substantial costs on society and is not mandated constitutionally or otherwise. *Andresen v. Maryland*, 427 U.S. 463 (1976); *Stone v. Powell*, 428 U.S. 465 (1976). Rather, the rule is "a judicially created remedy designed to safeguard * * * rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *United States v. Calandra*, 414 U.S. 338, 348 (1974). Thus, the primary if not the sole purpose of the rule is to deter future unlawful conduct, rather than to cure the invasion of a personal right of an individual, and application of the rule in any particular case must be determined in light of this purpose. If application of the exclusionary rule in a particular case will not "result in appreciable deterrence, then, clearly, its use * * * is unwarranted." *United States v. Janis*, 428 U.S. 433, 454 (1976).

---

[16]For a discussion of this point, see Note, "Retroactivity and the Exclusionary Rule: A Unifying Approach," 97 Harv. L. Rev. 961, 972 (Feb. 1984).

In considering whether the requisite deterrent effect will be accomplished by application of the exclusionary rule, it is necessary first to determine those individuals whose behavior the rule is intended to affect, as well as the qualitative type of behavior which is the proper focus of the rule. "As with any remedial device, the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served." *United States v. Calandra, supra* at 348; *United States v. Janis, supra* at 447.

The Supreme Court recently specifically delineated the category of individuals whose behavior the exclusionary rule is intended to affect, and generally limited the scope of the rule, in *United States v. Leon*, 468 U.S. ____ (1984), and its companion case, *Massachusetts v. Sheppard*, 468 U.S. ____ (1984). These cases make it clear that application of the rule in this case would not "efficaciously serve" the remedial objectives of the rule, and exclusion of the grand jury materials in this case is therefore unwarranted.

In *Leon*, after initiating a drug-trafficking investigation involving surveillance of the defendant's activities, a police officer prepared an application for a warrant to search three residences and the defendant's automobiles for numerous items. The warrant application was reviewed by several district attorneys, and was then submitted to a State court judge. After reviewing the application, the State court judge issued the requested warrant, and the ensuing searches pursuant thereto produced large quantities of drugs and other evidence. The defendants were then indicted for Federal drug offenses and, in a Federal District Court, filed motions to suppress the evidence that was seized pursuant to the warrant. After a hearing on the motions, the District Court granted the motions in part on the ground that the warrant was issued by the State court judge without probable cause. Although the District Court recognized that the warrant application was made by the police officer in good faith, the court held that the evidence should nevertheless be suppressed. The Court of Appeals for the Ninth Circuit affirmed the District Court's holding. The Supreme Court granted certiorari solely to consider the question whether the exclusionary rule "should be modified so as not to bar the admission of evidence seized in reasonable, good faith reliance on a search warrant that is

subsequently held to be defective." *United States v. Leon, supra* at ____.

In considering this issue, the Supreme Court first recognized that whether the exclusionary sanction is appropriately applied in any given case is a separate issue from whether the rights of the party seeking to invoke the rule were violated. *United States v. Leon, supra.* The Supreme Court has on many occasions refused to hold that illegally obtained evidence must always be excluded. See, e.g., *United States v. Janis, supra; United States v. Calandra, supra; Alderman v. United States,* 394 U.S. 165 (1969). Moreover, the Court reiterated the well-established proposition that the predominant, and even the sole justification for the exclusionary rule is the deterrent effect that suppression would have on future unlawful conduct and stated that since the exclusion of highly probative evidence at trial imposes substantial costs on society, application of the rule in a particular case could only be justified if it would result in "appreciable deterrence." *United States v. Leon, supra* at ____, citing *United States v. Janis, supra* at 454.

Against the above backdrop, the Court in *Leon* went on to consider whether the deterrent purpose of the exclusionary rule would be served by suppression of the evidence under the facts presented. Based upon the Court's evaluation of the costs and benefits of suppressing reliable evidence seized by officers in reasonable reliance on a warrant issued by a detached and neutral magistrate, the Court concluded that such evidence should be admissible in the prosecution's case in chief. *United States v. Leon, supra* at ____.

In reaching this conclusion, the Court rejected the notion that the exclusion of evidence could be justified by the effect that such exclusion would potentially have on future behavior of magistrates and judges. The Court stated (468 U.S. at ____):

> To the extent that proponents of exclusion rely on its behavioral effects on judges and magistrates in these areas, their reliance is misplaced. First, the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. Second, there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion.
>
> Third, and more important, we discern no basis, and are offered none, for believing that exclusion of evidence seized pursuant to a warrant will have a significant deterrent effect upon the issuing judge or magistrate. * * *

Judges and magistrates are not adjuncts to the law enforcement team; as neutral judicial officers, they have no stake in the outcome of particular criminal prosecutions. The threat of exclusion thus cannot be expected significantly to deter them. Imposition of the exclusionary sanction is not necessary meaningfully to inform judicial officers of their errors, and we cannot conclude that admitting evidence obtained pursuant to a warrant while at the same time declaring that the warrant was somehow defective will in any way reduce judicial officers' professional incentives to comply with the Fourth Amendment, encourage them to repeat their mistakes, or lead to the granting of all colorable warrant requests. [Fn. refs. omitted.]

Under these circumstances, the Court found that the purpose underlying the exclusionary rule would not be appreciably served by suppression. The Court rejected the contention that applying the exclusionary rule in such cases might tend to deter enforcement officials from future inadequate warrant requests or at least encourage such officers to more closely scrutinize the form of the warrant and point out suspected judicial errors, finding such contentions "speculative." *United States v. Leon, supra* at ____. In cases where the acquisition of evidence is preconditioned on an application to a judicial officer, the enforcement authority can do no more than submit the application, exercising reasonable and objective good faith. It then becomes, the Court stated (468 U.S. at ____)—

the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirement of the Fourth Amendment. In an ordinary case, the officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. * * * Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations. [Citation and fn. ref. omitted.]

In light of the above considerations, the Court adopted a "good faith" exception to the exclusionary rule, concluding (468 U.S. at ____)—

that the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion. * * *

In so holding, the Court acknowledged that exclusion may not always be inappropriate in cases where evidence has been obtained pursuant to a court-issued warrant. The ultimate inquiry is whether or not the law enforcement officer has

acted in reasonable and objective good faith. As stated by the Court in *Leon* (468 U.S. at ____):

> Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. * * * The exception we recognize today will also not apply in cases where the issuing magistrate wholly abandoned his judicial role * * *; in such circumstances, no reasonably well-trained officer should rely on the warrant. Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." * * * Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid. * * * [Citations omitted.]

Upon review of the Supreme Court's analysis of the exclusionary rule in *Leon,* we must conclude that, in the context of this case, petitioner's requested remedy is unavailable to her. The Supreme Court's articulation of the "good faith" exception to the rule makes it clear that application of the rule in this case would be inappropriate, whether or not the rule 6(e) order herein was improvidently granted.

As fully discussed above, in determining whether the exclusionary rule is to be applied in a particular case, the proper focus is the effect that application of the rule would have on future conduct of law enforcement officers, not judicial officers. *United States v. Leon*, 468 U.S. at ____. Accordingly, only if exclusion of the grand jury materials in this case would operate as a substantial deterrent to future unlawful conduct by Government attorneys, would such sanction be appropriate.

We have no reason to doubt that the Government attorneys in this case were acting in good faith when they petitioned the District Court for the rule 6(e) order herein. The motion itself fully disclosed the relevant facts when it was presented to the District Court judge for his consideration. Moreover, in light of the state of the law regarding rule 6(e) disclosure determinations at the time the order in this case was issued (discussed fully in subsection II *supra*), we are unwilling to conclude that the Government officers in this case were dishonest or reckless in preparing the rule 6(e) motion herein, or could have harbored an objectively reasonable belief that the standards under which the rule 6(e) order was issued were not in

compliance with the law. See *United States v. Leon*, 468 U.S. at ____. Certainly we cannot say that no reasonably well-trained Government attorney should have relied on the rule 6(e) disclosure order herein.

The Government's receipt of the grand jury materials in reliance upon the rule 6(e) order was therefore in good faith and objectively reasonable, and under the analysis adopted by the Supreme Court in *United States v. Leon, supra*, suppression of the materials in this case would therefore not appreciably serve the deterrent purpose of the exclusionary rule.

Accordingly, even if we had to directly address the issue of the exclusionary rule in this case, we would not apply the sanction here.[17]

*An appropriate order will be entered.*

Reviewed by the Court.

DAWSON, STERRETT, WILES, NIMS, PARKER, HAMBLEN, SWIFT, and JACOBS, *JJ.*, agree with this opinion.

COHEN, *J.*, concurs in the result only.

GERBER, *J.*, did not participate in the consideration of this case.

———

SIMPSON, *J.*, concurring: In the long view of history, 12 years is a relatively short period of time, but in that short time, there have been significant changes in the construction and application of the exclusionary rule.

Twelve years ago, this Court faced the question of whether to apply the exclusionary rule in the civil cases heard by us. I vigorously objected to the extension of such rule to such cases. *Suarez v. Commissioner*, 58 T.C. 792, 820 (1972) (Simpson, J., dissenting). I argued that the only justification for the application of the exclusionary rule was to deter lawless conduct on the part of police officials and that the efficacy of the rule in accomplishing that objective was highly doubtful. 58 T.C. at 821–822. I pointed out that when evidence is secured by illegal

———

[17]Petitioner, however, retains the right to object to any proferred evidence at trial on other appropriate grounds. *Estate of Temple v. Commissioner*, 65 T.C. 776 (1976).

activity by State officials acting independently, the exclusion of the evidence in a Federal proceeding would not materially deter such conduct. 58 T.C. at 822. I also suggested that, in any event, evidence should be excluded only when there was a substantial violation of an individual's constitutional rights. If the police acted in good faith, the violation would not be considered substantial, and the exclusion of the evidence would serve no deterrent purpose. 58 T.C. at 825 (citing A.L.I. Model Code of Pre-Arraignment Procedures, sec. SS 290.2(2), Proposed Official Draft No. 1, 1972). Despite my objections, the Court decided to apply the exclusionary rule in a civil tax case. 58 T.C. at 815.

Since that decision, the Supreme Court, in *United States v. Janis*, 428 U.S. 433 (1976), had occasion to decide whether evidence illegally obtained by local police should be excluded in a Federal case, and the Court concluded that the exclusion of the evidence under such circumstances would not serve a deterrent purpose and therefore declined to apply the exclusionary rule. See our decisions in *Guzzetta v. Commissioner*, 78 T.C. 173 (1982), and *Black Forge, Inc. v. Commissioner*, 78 T.C. 1004 (1982), in which we applied such holding in tax cases. Now, the Supreme Court also has recognized that no deterrent purpose would be served by excluding evidence when the officials were acting in good faith. *United States v. Leon*, 468 U.S. ____ (1984); *Massachusetts v. Sheppard*, 468 U.S. ____ (1984). I am happy to see that we are applying such holding in this case.

In our democratic society, we must constantly and vigorously maintain the ramparts protecting the rights of individuals secured by the Constitution. However, we must also recognize that one of the most valuable rights of a democratic society is the assurance that the law is being applied fairly and equally to all persons. We must assure the people that the legal system can and will operate to protect their rights and to apply the law equally. When a wrongdoer is allowed to go free because of some technical irregularity on the part of the police, the confidence in the equal application of the law and the legal system is severely shaken. By these modifications in the exclusionary rule, we are redressing the balance between rights of the individuals and of society. I trust that these modifications will not encourage lawless conduct. I am sure

that they will assist in shifting the focus to a trial on the merits rather than focusing on the alleged illegal conduct of police officials. In so doing, the modification will bring about more effective application of the law.

SHIELDS, SWIFT, and JACOBS, *JJ.*, agree with this concurring opinion.

---

WILBUR, *J.*, concurring: We are here invited to exclude evidence acquired pursuant to a court order issued under standards subsequently determined by the Supreme Court to be improper. The majority declines this invitation on two independent grounds, one of the alternative holdings clearly stating that the exclusionary rule may not be invoked on the facts before us. (Part III of the majority opinion.) I concur solely on the basis of this alternative holding.

The exclusionary rule is principally, if not solely, designed to deter improper behavior by investigative personnel. *Nix v. Williams,* 467 U.S. ____ (1984); *United States v. Janis,* 428 U.S. 433, 446 (1976). See also *Stone v. Powell,* 428 U.S. 465, 486 (1976); *United States v. Calandra,* 414 U.S. 338, 347–348 (1974); and *Tirado v. Commissioner,* 689 F.2d 307, 309, 310 (2d Cir. 1982). The Supreme Court recently stated that, "it is clear that the cases implementing the exclusionary rule 'begin with the premise that the challenged evidence is *in some sense* the product of illegal government activity.'" *Nix v. Williams, supra.* See also *United States v. Crews,* 445 U.S. 463, 471 (1980). No illegal conduct occurred in this case, and there is no improper behavior of investigative personnel to deter. The lawyers in this case religiously followed the prescribed procedures. The court that created and supervised the grand jury provided the material in good faith pursuant to the only procedure available—the one established by Congress. It is impossible to ask more of any Government official—whether it be a U.S. attorney or a District Court judge—and second guessing the District Court judge on Monday morning can never change the outcome of the previous Saturday. The exclusionary rule and the policies on which it rests have nothing to do with these circumstances. *United States v. Leon,* 468 U.S. ____ (1984). The majority has plainly said so and it should say no more.

Unfortunately, it says a good deal more. Since it clearly and quite properly holds the exclusionary rule may not be invoked on the facts before us, it makes no difference whether the Supreme Court's rulings in *United States v. Baggot*, 463 U.S. 476 (1983), and *United States v. Sells Engineering, Inc.*, 463 U.S. 418 (1983), would be applied retroactively or not, for in either case, the evidence would be admissible on the facts before us. The majority itself states that "recent developments in exclusionary rule law make it clear that, at least under the facts of this case, it would be inappropriate to apply the rule even if we were to assume that the grand jury materials were obtained by respondent illegally."[1]

Accordingly, I am completely at a loss to explain why 90 percent of the majority opinion is devoted to a superfluous discussion of our jurisdiction to decide the admissibility of evidence (part I(A) of the majority opinion); the doctrine of comity and the circumstances under which the doctrine requires us to respect the rulings of other courts (part I(B) of the majority opinion); the decisional background of most of the important rule 6(e) cases (part II(A) of the majority opinion); and the rules of retroactivity (part II(B) of the majority opinion).

The extended discussion of retroactivity is based on a fundamental misunderstanding of the exclusionary rule which, as the majority notes, is "the underlying ground advanced by petitioner in support of her suppression motion." That misunderstanding is plainly revealed in the majority's observation that "a finding that the subsequently announced rules [the *Baggot* and *Sells* cases] are not to be applied retroactively effectively creates a legal fiction that the evidence in question was not *illegally* obtained." (Emphasis added.) Here the majority uses the word "illegally" to suggest that, measured against subsequent enlightenment, the wrong standard was utilized by the District Court in issuing the rule 6(e) order. But this in no way suggests that even assuming *Baggot* and *Sells* should be applied retroactively, that the evidence herein was "illegally obtained" (i.e., tainted) *for*

---

[1]Discussing *United States v. Leon*, 468 U.S. ____ (1984), the majority states that "The Supreme Court's articulation of the 'good faith' exception to the rule makes it clear that application of the rule in this case would be inappropriate, *whether or not the Rule 6(e) order herein was improvidently granted.*" (Emphasis added.)

*purposes of the exclusionary rule.* As is often the case, we simply have two distinct and entirely different uses of the word "illegally," and the majority confuses the two. Indeed, the Supreme Court has clearly stated (and the majority agrees) that evidence obtained in good-faith reliance on proper procedure is not tainted for purposes of the exclusionary rule. *United States v. Leon, supra.*[2]

These various digressions, along with statements made in a concurring opinion, require two brief comments. The first concerns the discussion of comity which implies that in a different posture we might feel compelled to undertake a de novo review of a District Court's rule 6(e) order. I reject this philosophy for the reasons I expressed in a concurring opinion in *Graham v. Commissioner,* 82 T.C. 299, 311–312 (1984):

> The grand jury is peculiarly a creature of the District Court that created it, and both by history and Federal rule, it is closely supervised by that court. The Federal Rules of Criminal Procedure, pursuant to Rule 6(e), specifically allocate responsibility for determining the propriety of using grand jury material for civil purposes to the District Court. Where the District Court supervising a particular grand jury has issued an order permitting the civil use of grand jury materials, that should end the matter for the Tax Court. Our jurisdiction is carefully circumscribed by statute and includes only civil matters; we certainly have no experience with, or responsibility for, grand juries. It is therefore wholly inappropriate for the Tax Court to reexamine the propriety of a District Court order under Rule 6(e), even if that order appears to be inappropriate to us. Since there was a Rule 6(e) order issued in the instant case, that ends the matter for me.
>
> This seems to be the only course of action that recognizes the diverse responsibilities of the Tax Court and U.S. District Courts, particularly the U.S. District Court that has responsibility for a specific grand jury. For these reasons and also to avoid duplicative proceedings, it is imperative that the Tax Court honor a Rule 6(e) order issued by a District Court having specific responsibility for a specific grand jury, even though we may have misgivings about the wisdom of that order.

The second point is to emphasize that the majority properly considered the exclusionary rule as a central issue in this case,

---

[2]Some reason for excluding relevant evidence must be offered, and the argument here made, the majority tells us, is that the release of the material contrary to the criteria in *Baggot* and *Sells* "constituted an abuse of the grand jury process requiring the suppression of all the grand jury material in this proceeding." Accordingly, the majority at the very beginning of its opinion states that, "we must decide whether the respondent's use of these grand jury materials to determine the deficiency against this petitioner was improper." Since this is the issue and the majority concludes, citing *United States v. Leon, note 1 supra,* that the evidence is not tainted, nothing else was at issue, and no more need be said.

although it should have considered it *the* central issue in the case. Our failure to apply the rule here does not suggest a similar decision on more compelling facts. Despite the implication in one of the concurring opinions, the exclusionary rule is not solely a Fourth Amendment rule, nor has any Court to my knowledge ever drawn an acquisition-versus-use dichotomy in applying the exclusionary rule. Indeed, application of the exclusionary rule is not limited to constitutional violations, but is also appropriate where evidence is obtained in violation of Federal statutes or Federal rules of procedure. *United States v. Blue*, 384 U.S. 251, 255 (1966); *Mallory v. United States*, 354 U.S. 449 (1957); *Upshaw v. United States*, 335 U.S. 410 (1948); *McNabb v. United States*, 318 U.S. 332 (1943); *Nardone v. United States*, 308 U.S. 338 (1939); *United States v. Genser*, 582 F.2d 292 (3d Cir. 1978).

Furthermore, it is clear that courts, commentators, and even governmental agencies consider suppression to be an appropriate remedy where grand jury material is improperly disclosed and used for civil purposes in violation of rule 6(e). See *In re Grand Jury Investigation No. 78–184*, 642 F.2d 1184 (9th Cir. 1981); *Matter of Fred R. Witte Center Glass No. 3 v. United States*, 544 F.2d 1026, 1029 (9th Cir. 1976); *In re Special March 1974 Grand Jury, etc.*, 541 F.2d 166, 170 (7th Cir. 1976); *Coson v. United States*, 533 F.2d 1119, 1120 (9th Cir. 1976); Proposed Amendments to the Federal Rules of Criminal Procedure: Hearings on H.R. 5864 Before the House Subcomm. on Criminal Justice, Comm. on the Judiciary, 95th Cong., 1st Sess. 87, 55–56 (1977) (statement of Roger Robb, U.S. Court of Appeals for the District of Columbia Circuit, and statement of Acting Deputy Attorney General Richard L. Thornburgh); Note, "Administrative Agency Access to Grand Jury Materials," 75 Colum. L. Rev. 162, 188 (1975). See *United States v. Baggot*, 463 U.S. at ____ (dissenting opinion of Chief Justice Burger, citing inter alia, *Cohen v. Commissioner*, a Memorandum Sur Order of this Court, unofficially reported at 42 T.C.M. 312, 50 P-H Memo T.C. par. 81,901 (1981), wherein the exclusionary rule was applied to bar grand jury evidence acquired without a valid rule 6(e) order). See Goldfein & Pisem, "Tax Court Expands Exclusionary Rule to IRS Violations of Grand Jury Secrecy," 55 J. Tax. 312 (1981).

In conclusion, the only issue in this case is the applicability of the exclusionary rule to the facts before us. In the last few pages of a long opinion, the majority clearly and persuasively answers no to that question. I concur in that answer, but continue to believe, for the reasons stated in *Cohen v. Commissioner, supra*, that exclusion is the proper remedy when evidence is acquired by means abusive of the rule 6(e) procedure established by Congress.

FAY, GOFFE, SHIELDS, and CLAPP, *JJ.*, agree with this concurring opinion.

---

CHABOT, *J.*, concurring: I join in parts I and II of the majority opinion. I do not join in part III of the majority opinion. Since part III of the majority opinion does not affect the result (majority opinion, pp. 336, 341), I agree with the result reached by the majority.

Part III of the majority opinion deals with "the exclusionary rule". In general terms, "the exclusionary rule"[1] operates in certain instances to exclude illegally obtained evidence.

Although evidence is excluded under "the exclusionary rule", most evidence exclusion problems do not fall within "the exclusionary rule". For example, exclusion of evidence on account of hearsay (rule 802, Fed. R. Evid.), prejudice (rule 403, Fed. R. Evid.), compromise offers (rule 408, Fed. R. Evid.), the "best evidence rule" (rule 1002, Fed. R. Evid.), or any of a host of other exclusionary rules codified by the Congress in the Federal Rules of Evidence, are not in any way connected with "the exclusionary rule". Likewise, the question of exclusion of evidence in the instant case is in no way connected with "the exclusionary rule".

Further, the sine qua non of "the exclusionary rule"— deterrence of Government functionaries from violating a person's constitutional or statutory rights in the seizing of or searching for property—is not present in the instant case. In the cases cited in part III of the majority opinion, the violation of rights occurred when the Government initially improperly *obtained the evidence* in question. Subsequent *use of the*

---

[1]The Supreme Court's opinion in *United States v. Leon*, 468 U.S. \_\_\_\_ (1984), refers to this as "the Fourth Amendment exclusionary rule".

*evidence* was not itself a part of the violation of rights.[2]

The instant case deals with what seems to me to be an essentially different situation. In the instant case, the Government's obtaining of the information, and its use in the grand jury proceeding, did not violate petitioner's constitutional or statutory rights.

Rather, the problem in the instant case arises from the use to which respondent apparently has put the obtained information. It is *this type of use* which drew the disapproval of the Supreme Court in *United States v. Baggot*, 463 U.S. 476 (1983).[3] See also *United States v. Sells Engineering, Inc.*, 463 U.S. 418, ____ (1983).[4]

---

[2] In its recent opinion in *United States v. Leon*, 468 U.S. ____ (1984), the Supreme Court stated this point as follows (468 U.S. at ____):

"The Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands, and an examination of its origin and purposes makes clear that the use of fruits of a past unlawful search or seizure 'work[s] no new Fourth Amendment wrong.' *United States v. Calandra*, 414 U.S. 338, 354 (1974). The wrong condemned by the Amendment is 'fully accomplished' by the unlawful search or seizure itself, *ibid.*, and the exclusionary rule is neither intended nor able to 'cure the invasion of the defendant's rights which he has already suffered.' *Stone v. Powell, supra*, at 540 (White, J., dissenting). The rule thus operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the person aggrieved.' *United States v. Calandra, supra*, at 348."

[3] "The two requirements, though related in some ways, are independent prerequisites to (C)(i) disclosure. The particularized need test is a criterion of *degree*; the 'judicial proceeding' language of (C)(i) imposes an additional criterion governing the *kind* of need that must be shown. It reflects a judgment that not every beneficial purpose, or even every valid governmental purpose, is an appropriate reason for breaching grand jury secrecy. Rather, the Rule contemplates only uses related fairly directly to some identifiable litigation, pending or anticipated. Thus, it is not enough to show that some litigation may emerge from the matter in which the material is to be used, or even that litigation is factually likely to emerge. The focus is on the *actual use* to be made of the material. If the primary purpose of disclosure is not to assist in preparation or conduct of a judicial proceeding, disclosure under (C)(i) is not permitted. See *United States v. Young*, 494 F.Supp. 57, 60–61 (ED Tex. 1980)." [Emphasis in original; fn. ref. omitted.]

[4] "Second, because the Government takes an active part in the activities of the grand jury, disclosure to government attorneys for civil use poses a significant threat to the integrity of the grand jury itself. If prosecutors in a given case knew that their colleagues would be free to use the materials generated by the grand jury for a civil case, they might be tempted to manipulate the grand jury's powerful investigative tools to root out additional evidence useful in the civil suit, or even to start or continue a grand jury inquiry where no criminal prosecution seemed likely. Any such use of grand jury proceedings to elicit evidence for use in a civil case is improper *per se*. *Procter & Gamble*, 356 U.S., at 683–684, 78 S.Ct., at 986–987. We do not mean to impugn the professional characters of Justice Department lawyers in general; nor do we express any view on the allegations of misuse that have been made in this case, see n. 36, *infra*. Our concern is based less on any belief that grand jury misuse is in fact widespread than on our concern that, if and when it does occur, it would often be very difficult to detect and prove. Moreover, as the legislative history discussed *infra*, Part III-B, shows, our concern over possible misappropriation of the grand jury itself was shared by Congress when it enacted the present version of Rule 6(e). Such a potential for misuse should not be allowed absent a clear mandate in the law."

From the Supreme Court's recent description of the basic considerations in application of the Fourth Amendment exclusionary rule (see notes 1 & 2 *supra*), when set off against the Supreme Court's recent description of the basic considerations in rule 6(e) order cases (see notes 3 & 4 *supra*), it appears to me the Fourth Amendment exclusionary rule is not relevant to those rule 6(e) order cases where the argued invalidity of the rule 6(e) order depends on the way respondent uses the disclosed information.

In the instant case, under the *Baggot* standard, respondent might have been able to obtain the disclosed information for a proper use; however, if we were to apply the *Baggot* standard, then the use that respondent has made of the disclosed information is itself the wrong that is being complained of.

In order to prevent an actual use of information which would violate the Supreme Court's understanding of the strictures of rule 6(e), Fed. R. Crim. P., as enacted by the Congress,[5] we are obligated to examine the propriety of the use. I agree with part I of the majority opinion that we have authority to so examine and to act on the conclusion we reach after such examination. However, I also agree with part II of the majority opinion that complete retroactivity of the Supreme Court's *Baggot* and *Sells* interpretations "would have a disruptive effect on the administration of justice." (Majority opinion at pp. 334–335.)

Accordingly, I concur in the result reached by the majority in the instant case.

---

WHITAKER, *J.*, concurring: I concur in this case to note the unnecessary exercise in legal analysis engaged in by the majority in parts I and II of the opinion. The crux of this issue is whether evidence consisting of grand jury materials should be suppressed. Clearly, suppression of the evidence is not justified as the majority concludes. The Supreme Court in

---

[5] See part III-B of the Supreme Court's opinion in *United States v. Sells Engineering, Inc.*, 463 U.S. 418 (1983), for a description of the Congress' actions, taking the text of rule 6(e), Fed. R. Crim. P., out of the hands of the Supreme Court.

*United States v. Leon*, 468 U.S. ____ (1984), and *Massachusetts v. Sheppard*, 468 U.S. ____ (1984), has now made explicit the narrow confines of the suppression of evidence policy foretold in *United States v. Janis*, 428 U.S. 433 (1976), and *United States v. Payner*, 447 U.S. 727 (1980). There is really nothing left to debate in the case at bar. Action was taken by respondent in reliance upon a valid rule 6(e) order obtained by the Department of Justice. That action cannot be classified as a violation of any constitutional guarantee or any other statutory right or public policy.

We have both the power and the obligation to rule upon the admissibility of evidence in our Court. It is, however, open to question whether we have the power to entertain a collateral attack on an order of another Federal court. Of more importance, it is in this case unnecessary and, therefore, improper to do so. In view of *Leon* and *Sheppard, supra*, retroactivity vel non of *Baggot*[1] and *Sells*[2] is merely an academic exercise, which we should decline to undertake as a matter of judicial restraint as well as economy. We have no occasion to become voyaguers outside the boundaries of now well-marked channels.

Petitioner's motion should be denied on the authority of *United States v. Leon, supra.*

WILBUR, SHIELDS, and CLAPP, *JJ.*, agree with this concurring opinion.

---

[1] *United States v. Baggot*, 463 U.S. 476 (1983).

[2] *United States v. Sells Engineering, Inc.*, 463 U.S. 418 (1983).